30 C.C.P.A.(Patents)

## In re SWENSON et al.

### Patent Appeals No. 4595.

Court of Customs and Patent Appeals.
Dec. 1, 1942.

Harold J. Kinney, of St. Paul, Minn. (Chas. S. Grindle, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

Appellants on November 13, 1934 filed their application in the United States Patent Office for a patent for new and useful improvements in a process for treating mineral substances and for the resultant product.

The Primary Examiner succinctly described the alleged invention as follows: "The alleged invention relates to a method of coloring roofing granules, which are to be used for covering asphalt coated roofing. The granules, which are sand, slate or other stone, are coated with a ceramic glaze composition containing a chromate or dichromate and a reducing agent, such as sulfur, coal, charcoal, starch, woodflour, glycerine, etc. This glaze is fired and fused on the granules; during the firing the chromate or dichromate is reduced by the reducing agent to form chromic oxide, an insoluble green pigment. The color of the pigment produced varies from blue-green to yellow green depending on the type of chromate or dichromate employed and the amount of reducing agent in the glaze. The process may be *alos* [also] used with a glaze composition containing chromic oxide and a reducing agent, in which case the reducing agent prevents the oxidation of the insoluble green chromic oxide to water soluble chromates and dichromates."

The application was allowed with seventeen claims October 30, 1937. Subsequently, the application was renewed containing the previously allowed claims and new claims, all of which were finally rejected by the examiner. Following the final rejection an amendment was filed, cancelling certain claims, substituting some of the claims and amending others. The applicants appealed from the final rejection, bringing to the Board of Appeals for review the decision of the examiner rejecting claims 58, 59, 74 to 84, inclusive, 86, and 89 to 117, inclusive, of the amended renewal application, but before the board, withdrew the appeal as to claims 58, 59, 90, 111, and 113 to 116, inclusive. The appeal as to those claims was dismissed by the board, which left for consideration claims 74 to 84, inclusive, 86, 89, 91 to 110, inclusive, 112 and 117. The board in its decision of January 8, 1941 affirmed the decision of the examiner rejecting all of the claims before it. On February 26, 1941, appellants filed their notice of appeal to this court and on March 13, 1941 filed a continuing application, Serial No. 383,168, to the application herein, which continuing application is involved in a copending Patent Appeal No. 4766, which is decided concurrently herewith.

In this court appellants moved to dismiss the appeal as to claims 74 to 77, inclusive, 80, 83, 84, 91, 94 to 96, inclusive, 98 to 110, inclusive, 112 and 117, which motion will be granted. The claims retained in the present appeal are claims 78, 79, 81, 82, 86, 89, 92, 93 and 97 of which claims 78 and 86 are illustrative and read as follows:

"78. In the manufacture of colored granules coated with a fused glaze coating of the order of blue-green, normal green, yellow-green, the step or steps which comprise coating and reacting a water soluble salt containing the radical of oxygen and chromium, fluxing the glaze forming ingredients under at least roasting temperatures in the presence of a reducing agent selected from the group consisting of sulfur, coal, carbon, charcoal, starch, wood flour, sugar and glycerine.

"86. Colored granules comprising heat-resistant base granules coated with a green colored ceramic glaze containing a water-insoluble green oxide of chromium pigment, said glaze being substantially free of water-soluble chromates and dichromates."

The involved claims were rejected as unpatentable over the prior art and claims 78, 79, 81, 82, 92, 93 and 97 were further rejected as containing improper "Markush" groups.

The cited references are: Fisher, 1,766,814, June 24, 1930; Fisher, 1,782,648, November 25, 1930; Brown, 1,831,784, November 10, 1931; Baggs et al., 1,959,149, May 15, 1934.

 Appellants in their brief contend that because claims 78, 79, 81, 82, 92, 93 and 97 were not questioned as to their form by the examiner who first passed upon them, the examiner and the board in their subsequent action erred in rejecting these claims on the ground that they are improper "Markush" groups. There is no merit to such a contention, for the reason that an application when renewed is subject to all of the hazards as to patentability of the claims that exist in an application coming before the examiner for the first time. Rule 176 states: " * * * The renewal application will * * * be subject to examination like an original application." See LeBrou v. Nix, 38 App.D.C. 494.

 As an exception to the long-established practice in the Patent Office rejecting claims which in form are alternative, for the reason that they do not definitely set out the invention but only state that the invention may reside in any one of several specified alternatives, Ex parte Reid et al., 15 O.G. 882, 1879 C.D. 70; Ex parte McDougal, 18 O.G. 130, 1880 C.D. 147, is the doctrine first enunciated by the Commissioner of Patents in the case of Ex parte Markush, 340 O.G. 839, 1925 C.D. 126. Hence the term "Markush" claim. In that case a petition was filed with the commissioner challenging the action of the examiner objecting to the form of certain claims as being alternative. The applicant in his application had stated he discovered that the coupling of a diazo compound of aniline or its homologues or the halogen substitutes thereof with halogen substituted pyrazolones would produce dyes of exceptional fastness. The examiner objected to the form of the claims, holding them to be alternative in that they included a diazotized solution of aniline or its homologues or halogen substitutes. Thereupon, to avoid the objection as to alternativeness the term "mono-amine" was substituted. The examiner held that term to be too broad for the reason that it would include compounds which would not work in the combination set out in the application and also that only aniline and its homologues had been disclosed. To meet this objection, the applicant substituted for "mono-amine" in the same claims the phrase "material selected from the group consisting of aniline, homologues of aniline and halogen substitutes of aniline." The examiner objected to the use of that phrase for the reason that in his opinion it evaded the alternative form without in fact avoiding alternativeness, and he also stated that the phrase was not the expression of a generic term. From that objection the petition to the commissioner was filed.

The commissioner in his decision noted the examiner had admitted the expression "mono-amine" to be truly generic but held that it was an example of a generic term which included a number of substances not all of which could be used in the combination stated, instancing aliphatic mono-amines and pyridine mono-amines. The commissioner then held, that if there were a true subgeneric term, which would include the elements which the applicant found useful and exclude those which are not, that the use of such term is proper and does not make the claim in which it is used alternative. He also held that if there be no known subgeneric term then the applicant might employ a generic term limited to the elements found to be operative. The commissioner, in summary, said: "In place of the expression originally used, which the Examiner objected to as alternative, applicant substituted a generic term, which was objected to as too broad, and he is now attempting to coin a subgeneric expression—viz., a group comprising certain substances." The claims containing the coined subgeneric expression were therefore held to be unobjectionable as to form.

There has since been no deviation by the Patent Office from the doctrine set out in the Markush case, supra, and in subsequent decisions it has been, in our opinion, properly interpreted.

In the case of Ex parte Palmer and Fulton, 398 O.G. 707, 1930 C.D. 3, it was stated as follows: "It was not intended to rule in the Markush case that any substances which would accomplish applicant's purpose might be included in the claim in the form stated, irrespective of whether

those substances could properly be regarded as species of a known genus or subgenus or whether they were so related that the discovery of the desired property in one would suggest its existence in the other, so that the granting of a patent specific to one might justify the refusal of a patent on an application specific to another."

In the case of Ex parte Larson, 422 O.G. 3, 1932 C.D. 17, it was held that although the situation there presented was not the same as that appearing in the Markush case, supra, the principle involved in the latter case was applicable to the facts in the former. In that case certain claims were rejected as alternative which contained the following language: "a heated catalyst consisting of the reduction product of a fused mixture of copper oxide and an oxide of one of the elements of the group manganese, tungsten, zinc, cadmium and molybdenum."

The board held that since applicant had disclosed, used and claimed only the metallic oxides which would work in his process he had "made them equivalents and a related group in said process". It will be noted that the group contains only metallic oxides of the stated elements and in view of this of course the grouping was proper.

■ In the case of Ex parte Burke, 441 O.G. 509, 1934 C.D. 6, it was held that: "The Markush decision was not designed to give an applicant generally a different kind of patent claim from that enjoyed prior to the decision and surely did not contemplate the joinder under one group of a plurality of substances solely because they could all be made use of to a common end in a process or composition. The Markush group was limited, and properly so, to substances having in addition a community of chemical or physical characteristics definitely recognized in scientific classification."

■ In the case of Ex parte Dahlen, 441 O.G. 510, 1934 C.D. 9, the commissioner stated as follows: " * * * Where the substances, though serving a common end in a given process (or composition), are so dissimilar or nonrelated chemically or physically that it would be repugnant to accepted principles of scientific classification to associate them together as a generic or subgeneric group, the Markush formula cannot be used, and [as] was held in Ex parte Palmer et al., 1930 C.D. 3; 398 O.G. 707."

We are of opinion that the doctrine of the Markush case, as consistently followed in the Patent Office, is proper, liberal and wholesome.

We can see no inconsistency in the application of this doctrine in the case of Ex parte Dean, 38 U.S.P.Q. 499, as is contended by appellants. In that case, the Board of Appeals held that the applicant might voluntarily omit one member of a chemical group even if the omitted member might have been included. The mere fact that the board believed the cases of Ex parte Burke and Ex parte Dahlen, supra, were not intended to apply to a case of that character does not by any means create a doubt concerning the application of the Markush doctrine in a proper case.

■ In the instant case it was held by the tribunals below that an improper Markush grouping resided in the phrase "a reducing agent selected from the group consisting of sulfur, coal, carbon, charcoal, starch, wood flour, sugar and glycerine." Applying the Markush doctrine to the claims containing such grouping it is at once apparent that sulfur, which is an element, cannot possibly have any common characteristic with the other seven reducing agents except that it will perform the same function as the other agents. This is not sufficient. Ex parte Palmer and Fulton, supra.

It may be proper, as was held by the Board of Appeals in the said companion appeal No. 4766, that each of the said seven agents can be included in the coined expression "carbonaceous reducing agent". But sulfur is not to be found classifiable as a member of such a kind or class of reducing agents, and therefore its inclusion with carbonaceous reducing agents vitiates all of the claims in which it appears, and under the Markush doctrine those claims were properly rejected. Furthermore, if the reducing agents set out in the claims are to be considered each as a separate species, the claims are likewise improper in form as being alternative because they cover more than three species which is all that may be claimed in a single application in accordance with Patent Office Rule 41.

Having concluded that claims 78, 79, 81, 82, 92, 93 and 97 have been rightly rejected as containing improper Markush groups, it is not necessary to discuss the rejection of those claims in view of the prior art.

One of the grounds for the rejection of claims 86 and 89 was that they are readable on either the Brown reference or the Fisher patent, 1,766,814. Claim 89 differs from claim 86 only in that it claims a waterproof roofing in which are embedded in a layer of adhesive the granules of claim 86.

The Fisher patent, 1,766,814, relates to a process for coloring granular material, particularly slate, as a surfacing for prepared roofing. According to the specification the granules can be so processed that the product may be dark glazed green, dull red glazed, glazed black or brownish black, and that the colored granules upon the surface of which a sodium silicate glass is formed by the process will withstand the weather. In his process for producing green granules the patentee states that he uses a mixture of sodium silicate, chromic oxide, borax and water. When the mixture has been applied to the slate granules they are heated in a kiln to a temperature of between 1500 and 1600 degrees Fahrenheit. The chromic oxide produces the green coating.

The Brown patent relates to rock granule surfacing material and its manufacture and to roofing surfaced therewith. The basic raw material is granules of rock such as quartzite, mica schist, ganister or other rock or material susceptible of coloring or glazing by the process. Different colors may be produced on the granules by means of the application of different substances. For green colors the patentee may employ, among other metallic coloring agents, sodium dichromate in an aqueous solution of a fluxing salt such as sodium nitrate or sodium carbonate. The granules after having been coated are heated to a drying degree and then fired in a kiln or furnace in a temperature sufficient to cause fusion of the glaze and combination thereof with the granules,—"thus producing solid solutions of metallic silicates of the characteristic color due to the presence of the particular metal or metals employed in the glaze."

Claims 86 and 89 are product claims and are directed to green colored granules, the coloring being in the coating glaze containing a water-insoluble green oxide of chromium pigment, and substantially free of water-soluble chromates and dichromates. These claims were not included among the seventeen claims allowed in the first instance. Each of those allowed claims contained what we have heretofore held to be an improper Markush grouping. In his statement rejecting claims 86 and 89 the examiner stated as follows: " * * * Glazes containing chrome oxide as the sole pigment are fully disclosed by Fisher (1) and Brown. The limitation that the glaze is substantially free from water-soluble chromates and dichromates cannot impart patentability to these claims, since it is obviously desirable that the color be pure chromic oxide and that water-soluble ingredients be absent. Furthermore, the granules of Fisher (1) and Brown are considered to be substantially free of water-soluble chromates and dichromates; this will be especially true after exposure to the weather for some time, whereupon the water-soluble salts will be washed out by rain."

The board, in affirming the said rejection by the examiner, stated as follows: " * * * Taking the Brown patent, for example, it discloses imparting a glaze of any color desired to granules by interfusing fluxing or glazing agents with their surfaces. For green colors, potassium or sodium dichromate is employed in the color glaze solution. The granules are wet or impregnated with the soluble glaze fired and cooled. The patentee states that the glazed and colored particles thus obtained are quite impervious to moisture from the atmosphere and to oils from the roofing to which they are applied, that the compounds formed in the firing operation completely coat the granules with an insoluble gloss-like coating or surface glaze so that their color is insoluble and highly permanent with high weather-resisting properties generally characteristic of ceramic glazes. It is considered that this Brown disclosure renders claims 86, 89 and 104 unpatentable."

It is noted that neither claim 86 nor claim 89 makes mention of any reducing agent. It is apparent that the coating of the Brown patent must derive its green color from oxide of chromium. The patentee states his glaze and color are insoluble and it therefore follows that his coating contains water-insoluble green oxide of chromium free from water-soluble chromates and dichromates. There is no further limitation in claims 86 and 89.

The Fisher patent, 1,766,814, likewise describes a coating on granules containing green chromic oxide and which is

free from chromates. The patentee states that his coatings will withstand the weather, and it would therefore follow, in our opinion, that the chromic oxide cannot be water-soluble. We think that claims 86 and 89 are fully anticipated by either the Brown or the Fisher, 1,766,814, references, and the decision of the tribunals of the Patent Office should be affirmed.

The motion to dismiss the appeal as to claims 74 to 77, inclusive, 80, 83, 84, 91, 94 to 96, inclusive, 98 to 110, inclusive, 112 and 117 is granted, and the decision of the Board of Appeals affirming that of the examiner denying patentability to claims 78, 79, 81, 82, 86, 89, 92, 93 and 97 is affirmed.

Affirmed.