32 C.C.P.A. (Patents)

## Application of JONES.

## Patent Appeal No. 4975.

Court of Customs and Patent Appeals.
Feb. 7, 1945.

Rehearing Denied May 22, 1945.

Caesar & Rivise, of Philadelphia, Pa. (Charles W. Rivise and A. D. Caesar, both of Philadelphia, Pa., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner rejecting all of the claims, 1 to 9 inclusive, of an application for a patent for "Compositions of Matter and Methods of Making Said Compositions," as unpatentable over the prior art, which is as follows:

Henry, "Berichte," Volume 2, page 637;

Behrend et al., "Annalen," Volume 344, pages 24 and 25;

Taube et al., 1,841,458, January 19, 1932;

Skrbensky, 2,051,460, August 18, 1936;

Murphy, 2,135,987, November 8, 1938;

Dustman, 2,213,809, September 3, 1940.

The involved claims are all product claims and read as follows:

"1. The chemical individual selected from the group consisting of naphthyl methyl

thiocyanate and naphthyl methyl isothio-cyanate.

"2. 1-naphthyl methyl thiocyanate.

"3. 1-naphthyl methyl isothiocyanate.

"4. An insecticidal and fungicidal composition having as an active ingredient thereof a substance selected from the group consisting of naphthyl methyl thio-cyanate and naphthyl methyl isothiocyanate.

"5. An insecticidal and fungicidal composition having as an active ingredient thereof 1-naphthyl methyl thiocyanate.

"6. An insecticidal and fungicidal composition having as an active ingredient thereof 1-naphthyl methyl isothiocyanate.

"7. A growth regulating composition for plants having as an active ingredient thereof a substance selected from the group consisting of napthyl methyl thiocyanate and naphthyl methyl isothiocyanate.

"8. A growth regulating composition for plants having as an active ingredient thereof 1-naphthyl methyl thiocyanate.

"9. A growth regulating composition for plants having as an active ingredient thereof 1-naphthyl methyl isothiocyanate."

The application relates to compositions of matter used as insecticides, fungicides and growth regulants for plants.

The Henry reference, the date of which has not been given, discloses the chemical compound, benzyl thiocyanate, which has the formula $\bigcirc$ $CH_2CNS$, and is prepared by reacting benzyl chloride with potassium sulfocyanate.

The Behrend et al. reference, which likewise is without date in the record, discloses the compound benzyl isothiocyanate, bearing the formula $\bigcirc$ $CH_2-NCS$. It is prepared by heating benzyl thiocyanate.

The Taube et al., Skrbensky, Murphy and Dustman references disclose the use of various thiocyanates as insecticides and for improving plant life.

There is nothing in the prior art to indicate that insecticides or plant-improving compounds containing thiocyanates or isothiocyanates necessarily or inherently are fungicides.

The examiner rejected all of the claims as unpatentable over the Henry, Behrend et al. or Taube et al. references. Claims 4 to 6 were further rejected on the Taube et al. and Murphy patents, for the reason that

the compounds of those patents are shown to have insecticidal and fungicidal properties. Claims 7 to 9 were further rejected on the Dustman and Skrbensky patents for the reason that those patents show that organic thiocyanates are known to have growth-regulating properties.

Claims 4 to 9 were also rejected as unpatentable over claims 1, 2 and 3, for the reason that one skilled in the art would know that naphthyl methyl thiocyanates could be used as insecticides and growth-regulating agents, as shown by the Taube et al., Murphy, Dustman and Skrbensky patents. The examiner also held claims 4 to 9 unnecessary and merely leading to multiplication of claims.

Claims 2, 5 and 8 were further rejected by the examiner for the reason that they do not read on the elected species, appellant having elected the species specific to isothiocyanates. Should generic claim 1 be allowed it would carry with it the allowance of claim 2.

The Board of Appeals affirmed the examiner's decision in general language, stating, however, that it had not over-looked the superiority of appellant's compounds over those of the references from the standpoint of utility in killing insects. In this connection it stated: "However, the difference in potency referred to in appellant's brief is not so startling as to indicate any new or unobvious result, but would appear to be only such a difference as might be expected between compounds even in the same homologous series."

The prior art nowhere discloses appellant's products. Therefore the sole issue here is whether or not it would be obvious for a skilled chemist to produce appellant's compounds in view of such art.

The benzyl thiocyanate of the Henry reference differs from the 1-naphthyl methyl thiocyanate of the application in that in the former $CH_2SCN$ is bonded to a single benzene ring while in the latter the $CH_2-SCN$ is joined to a double condensed benzene ring.

The Behrend et al. benzyl isothiocyanate differs from the 1-naphthyl methyl isothiocyanate of appellant in that in the former $CH_2-NCS$ is bonded to a benzene ring while in the latter $CH_2NCS$ is bonded to a double condensed benzene ring.

The claimed compounds contain the naphthyl radical, a derivative of naphtha-

lene, while the compounds of the Henry and Behrend et al. references contain the phenyl radical, a derivative of benzene.

It was held below that one skilled in the art would realize that the compounds of appellant could be prepared by the method disclosed in the Henry or Behrend et al. publications, and that it would not involve invention to make such experiment and find it successful. The claims here, however, are not for a process. They are product claims, and those products are new.

■ While it is true, as stated by the tribunals below, that naphthalene closely resembles benzene in behavior and that similar types of derivatives from the former may be similar to the latter (see Bernthsen, A Textbook of Organic Chemistry, 1931, page 526), it is also true according to the same authority (page 529) that "This union of two benzene nuclei is accompanied by a modification of their properties, so that naphthalene and its derivatives differ characteristically from benzene in many respects."

It was held below that benzene, naphthalene and anthracene are members of the same series. We do not find this to be so stated in any of the chemical authorities available to us. It seems to be generally recognized by the authorities on organic chemistry that the melting point of benzene is about 5.5° and its boiling point about 79.6°, while naphthalene melts at about 80° and boils at about 218°. Anthracene melts at about 218° and boils at about 342°. These differences, in our opinion, certainly show an important characteristic difference between benzene, naphthalene and anthracene.

We are of opinion that benzene, naphthalene and anthracene do not comprise an homologous series. The difference in formula between each of those three substances is $C_4H_2$.

Appellant contends that to be homologous the difference in successive compounds must be $CH_2$. He cites many standard chemical authorities supporting such contention, among them being Holleman and Walker, A Textbook of Organic Chemistry, 1920, page 41; Fuson and Snyder, Organic Chemistry, 1942, page 10; and Bernthsen, A Textbook of Organic Chemistry, 1931, pages 20 and 21.

The Solicitor disagrees with this contention and quotes the definition of "homology" from Webster's New International Dictionary, 1940,—"The relation existing between the compounds of a series whose successive members possess, in addition to similarity in structure, a regular difference in formula. It is usually attended by a regular variation in physical properties. The term is used especially with reference to a series of compounds in which the regular difference is $CH_2$." He also quotes from Chamberlain, A Textbook of Organic Chemistry, Third Edition Revised, 1934, page 21, the definition of "homologous series" as "A series of compounds, the members of which differ in composition by a constant amount, and whose physical constants change uniformly, * * *." The Solicitor argues that those definitions clearly include series in which the members differ successively by $C_4H_2$.

While it could be concluded that the argument of the Solicitor is correct, nevertheless in our opinion standard works on organic chemistry should be considered as preferable authority to an ordinary dictionary definition. While Chamberlain's Organic Chemistry defines "homologous series" broadly, as quoted by the Solicitor, in all the series listed in that publication the members differ successively by $CH_2$. The homologs of benzene listed therein (benzene, toluene, xylene, mesitylene, etc.) have successive increments of $CH_2$. Neither naphthalene nor anthracene is listed therein.

Furthermore, in the authorities on organic chemistry that have been cited or are available to us, benzene, naphthalene and anthracene are not discussed togther, but in distinct and separate parts of the publications. It would seem that if there was a relationship between benzene and its derivatives and naphthalene and its derivatives, as was held below, and if there were more than one type of homologous series, such would be set forth by the authorities. Therefore we hold that there is no homology relationship between benzene and its derivatives, as shown in the references, and naphthalene and its derivatives, as shown in appellant's application.

The examiner held that the compounds of the application are closely similar to the compounds of the Henry and Behrend et al. references, and are identical with the latter in their primary characteristics. He held those reference compounds and the claimed compounds to be in the same class, in that both are aryl methyl thiocyanates, containing the identical thiocyanate radical

connected through a methylene (-CH₂-) radical to an aryl nucleus. He stated that the difference between the benzene nucleus of the benzyl compounds and the double condensed ring nuclei of the naphthyl compounds is a secondary matter. As illustrative of that last statement he instanced the following series:

The first compound of that series is carbolic acid, while the second and third are alcohols.

From what has been said we cannot agree with the examiner in holding that the difference between the benzene nucleus and the double condensed ring nuclei is but a secondary matter.

| | |
|---|---|
| ethyl alcohol | $C_2H_5-OH$ |
| propyl alcohol | $CH_3-CH_2-OH$ |
| butyl alcohol | $CH_3-CH_2-CH_2-CH_2-OH$ |
| amyl alcohol | $CH_3-CH_2-CH_2-CH_2-CH_2-OH$ |
| hexyl alcohol | $CH_3-CH_2-CH_2-CH_2-CH_2-CH_2-OH$ |

Counsel for appellant has stated in his brief that the formula for ethyl alcohol should be broken down for purposes of clarity to read $CH_3-CH_2-CH$, and that the formula for propyl alcohol is incorrectly stated by the examiner and should read $CH_3-CH_2-CH_2-CH$. The examiner pointed out that all of those compounds possess the properties of aliphatic alcohols, and that the different hydrocarbon residue causes only a slight difference in degree between the different members of that homologous series. Counsel for appellant pointed out that the examiner omitted from that series its first member, methyl alcohol, $CH_3-OH$. It is obvious that methyl alcohol differs from ethyl alcohol in kind, and not merely in degree.

Counsel for appellant has argued, and we think with propriety, that the examiner should have taken a series from the aryl group. If this had been done the homologous series would appear to be:

$C_6H_5-OH$
$C_6H_5-CH_2-OH$
$C_6H_5-CH_2-CH_2-OH$

For the reasons hereinbefore given we hold that it involved invention to produce 1-naphthyl methyl thiocyanate and 1-naphthyl methyl isothiocyanate, and the decision of the Board of Appeals will be reversed as to claims 1, 2, and 3.

With respect to claims 4 to 9 inclusive we are in agreement with the tribunals of the Patent Office in holding that they are "product-use" claims, and would only cause multiplicity where the product per se is held to be new and patentable. It is trite to state that a patentee is entitled to every use of which his invention is susceptible, and claims 4 to 9 are merely for such use.

It is not necessary to discuss any of the other cited prior art, since those patents illustrate the use of other compounds as insecticides and growth-regulants.

The decision of the Board of Appeals is reversed with respect to claims 1, 2 and 3, and affirmed with respect to claims 4 to 9 inclusive.

Modified.