33 C.C.P.A. (Patents)

### Application of MIGRDICHIAN.

Patent Appeal No. 5130.

Court of Customs and Patent Appeals.
June 27, 1946.

Ellis S. Middleton, of New York City (Edmund H. Parry, Jr., of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (Clarence W. Moore, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner rejecting all the claims of appellant's application, numbered 1 to 15, inclusive, for a patent relating to method of treating organic materials such as seed to protect such materials from the ravages of plant pests and microorganisms. The broad title of the application is "For Mercury compounds as Disinfectants." The specification recites:

"The present invention relates to new disinfectants, and more particularly to certain organic mercury compounds which are especially effective against plant pests and microorganisms with the result that they may be used for all purposes of preserving and disinfecting, for example, in the immunizing of seed grain, the prevention of mildew formation, the preservation of wood, in the preservation of glue and the like."

It appears that claims 1, 2, 3, 7, 8, and 9 are generic in character. The others are species claims and are, as stated, in substance, in the brief of the Solicitor for the Patent Office, divisible into three groups, (1) Nos. 4, 10, and 13, specific to the use of mercury acetates; (2) claims 5, 11, and 14, specific to the use of organic mercury hydroxides, and (3) claims 6, 12, and 15, specific to the use of organic mercury chlorides.

Inasmuch as all the generic claims were rejected, appellant was required under Patent Office rule 41 to elect one species for prosecution. He elected the mercury acetate group, that is, claims 4, 10, and 13.

In consequence, none of the other species claims received consideration on their merits by the tribunals of the Patent Office. The examiner held them "not readable on the elected species," and the board held them "not entitled to examination in this case in the absence of an allowable generic claim."

Generic claim 1 reads as follows:

"1. The method of protecting organic materials subject to attack by plant pests and microorganisms which comprises treating the said materials with an organic mercury compound of the general formula:

$$R_1-O-\overset{\overset{\displaystyle R_3}{|}}{C}-\overset{\overset{\displaystyle R_4}{|}}{\underset{\underset{\displaystyle R_6}{|}}{C}}-Hg-R_2$$

in which $R_1$ denotes an organic group containing in addition to hydrogen *only one negative substituent,* $R_2$ denotes hydroxyl or a radical having the capacity of forming a salt with mercury, and $R_3$, $R_4$, $R_5$ and $R_6$ are selected from the group consisting of hydrogen, alkyl, aryl and aralkyl radicals." (Italics supplied.)

Species claim 4 (the first in number of the particular group of species claims selected for prosecution) reads:

"4. The method of protecting organic materials subject to attack by plant pests and microorganisms which comprises treating the said materials with an organic mercury compound of the general formula:

$$R_1-O-\overset{\overset{\displaystyle H}{|}}{C}-\overset{\overset{\displaystyle H}{|}}{\underset{\underset{\displaystyle H}{|}}{C}}-Hg-OCOCH_3$$

in which $R_1$ denotes an organic group containing in addition to hydrogen *only one negative substituent* selected from the group consisting of cyanogen, thiocyanogen, halogen, alkyloxy and carbalkoxy radicals." (Italics supplied.)

It will be observed that we have italicized the language, "only one negative substituent," appearing in the claims. This language, or phrase, appears in all the claims and is stressed by appellant.

We deem it proper to state at this point that counsel for appellant, although present at the hearing before us, declined to avail himself of his right under the rules of the court to present an oral argument, either by way of a preliminary opening statement or by way of reply to the statemens and arguments made orally by the Solicitor for the Patent Office, although he was invited to do so. Further, it may be said that he did not file, or seek to file, any reply brief to the brief of the Solicitor for the Patent Office, which, of course, was filed subsequent to his.

The brief of the solicitor presents a comprehensive analysis of the involved claims based upon the disclosures of the specification and compares them in considerable detail with the showing of the references.

The brief for appellant states that the formula embraced in generic claim 1, supra, is the general formula used in the claims and that the "R's represent certain designated elements or radicals." In view of this statement it is deemed unnecessary to quote the other claims here involved, since it is obvious that they stand or fall together.

In rejecting the claims (both the generic and elected species claims) the examiner cited two patents, viz.:

Gornitz et al. 2,145,594 Jan. 31, 1939
Callsen 2,119,701 June 7, 1938.

Specifically, the examiner, in his statement following the appeal to the board, said: "The * * * claims stand rejected as unpatentable over Gornitz, considered with Callsen," and thereafter analyzed what he deemed to be the pertinent features of the references.

The board rendered two written decisions in the case, the first dated October 12, 1944. Following it appellant filed a request for reconsideration in which the board was severely criticized for its failure to discuss as fully as counsel for appellant thought necessary certain of the issues raised before it.

In a well-tempered response the board further discussed appellant's contentions, but adhered to its original conclusion.

The board gave little attention to the Callsen patent, saying that it was regarded as merely cumulative. It was not overruled as a reference, however, and it is discussed to some extent in the brief of the Solicitor for the Patent Office. It relates to certain described mercury compounds (all the claims being product claims) which the specification states have a variety of uses, among them being (1) use for "the preservation of wood," (2) "for disinfecting purposes," (3) "for combating parasites, especially for immunizing seed grain * * *," which three are uses named in appellant's specification, supra. It is conceded by appellant that it "discloses starting materials or reactants, some of which are included in Applicant's broad class of substances," but appellant contends that the patentee "does not propose the use of these materials as bactericides or fungicides but on the contrary reacts them with other substances to form bactericides or fungicides in which he is interested," the brief saying further:

"In other words, he [Callsen] was totally unaware that many of his initial reactants were themselves efficient seed disinfectants so that it was unnecessary to go through the complicated reaction proposed by him in order to arrive at substances having these desirable properties."

On the other hand, the brief of the Solicitor for the Patent Office asserts (references to record pages being omitted):

"The fact of the matter is that Callsen specifically discloses * * * as a starting material or reactant, chloroethoxyethyl mercuric hydroxide. This is the hydroxy compound which Migrdichian asserts may be obtained by the action of dilute alkalies on the $\beta$—chlorethoxyethyl mercury acetate, his 'typical' compound * * *. The disclosure in the Callsen patent of chloroethoxyethyl mercuric hydroxide effectively refutes Migrdichian's statement * * * that such compounds are new.

"The examiner found the Callsen patent to be pertinent as showing that no invention resides in modifying the Gornitz et al. compounds so that they include a single negative substituent."

The foregoing assertion, which accords with the statement of the examiner is not answered by appellant, and we have no reason to doubt its accuracy.

We are confronted here with questions relating to chemical compounds and formulas which are technical in character. In such cases, where the findings of the examiner are not overruled by the board and are not questioned by the applicant, as is the situation here, we accept them without question.

The Gornitz et al. patent embraces both product and method claims. The method claims, however, are for the method of *producing* the products defined in the product claims. The claims here at issue, as may be seen from generic claim 1, supra, are for the method of protecting organic materials against plant pests, etc., by *using* the product defined in the formulas.

The patent recites that it relates to seed disinfectant compositions containing certain organic derivatives of mercury, stating that it is known that certain organic mercury compounds are suitable seed disinfectants. Claim 1 of the patent reads:

"1. A seed disinfectant composition, comprising an organic mercury compound of the structural formula

$$R—CH—O—C—C—Hg—Y$$

wherein Y represents an acid radical taken from the class consisting of inorganic and lower fatty acids, R a trihalogenated alkyl radical, R' is a radical taken from the class consisting of hydrogen and lower alkyl radicals and R" is a radical taken from the class consisting of hydrogen and lower saturated hydrocarbon radicals."

The brief of the Solicitor for the Patent Office, after quoting the foregoing formula from the patent (references to the record pages being omitted as indicated by stars), proceeds:

"Y in the patentees' formula may represent * * * the acid radical, acetoxy (OCOCH₃), or halogen (chlorine, Cl, e. g.);

in these respects Y has the same values as R₂ in appellant's general formula * * *. Continuing to compare these two formulas element by element, progressing toward the left, the next substituent is mercury (Hg) in both. Next in the patentees' formula, R may, for one thing, denote hydrogen (H); and to that extent it is, in its four appearances, identical with appellant's R₃, R₄, R₅, and R₆. The linking oxygen (O) in both formulas is the same. Upon analysis, it is thus apparent that Migrdichian's disinfecting compounds and the disinfectant compositions of the patentees, Gornitz et al., have, in large part, the same chemical construction. They differ in structure only to the extent that group R₁ of Migrdichian differs from the patentees group R—CH—.

$$OR'$$

"Upon the basis of the disclosures of the application and the patent, this difference is not great. In the patent * * * R may, inter alia, be a halogenated alkyl, of which chlorethyl (ClCH₂CH₂—) would be an example. Such a constituent is comprehended in Migrdichian's definition of R₁ * * * as an 'organic group * * * containing, in addition to hydrogen, at least one negative substituent, e. g., cyanogen, thiocyanogen, halogen, alkyloxy, carbalkoxyl and the like,' and the very substituent here cited as an example is included in Migrdichian's 'typical' compound β—chlorethoxyethyl mercury acetate * * *. The—CH—appears in the patentees' formula merely to show the linkage of the OR' (as it does in like manner in the formula of *a*- carbethoxyethyloxyethyl mercury acetate, which formula appears in example 3 on page 5 of the record); and so the patentees' formula and Migrdichian's differs only in the—OR'—substitutent where O is oxygen and R' is hydrogen (H), or an alkyl such as methyl (CH₃).

"Migrdichian's definition of R₁ *in his specification* does not exclude such a substituent as the patentees' OR', for Migrdichian there recites * * * that his R₁ group contains 'at least one negative substituent,' which means that the R₁ group may contain more than one negative substituent. Only Migrdichian's claims are

restricted; the claims call for 'only one negative substituent.'"

The statement so quoted from the solicitor's brief follows, although expressed in somewhat different phraseology, the statement of the examiner, and its accuracy has not been challenged before us.

In the brief on behalf of appellant it is asserted, the italics quoted:

"Many of the compounds used in the method claims are *new materials having never before been made or mentioned.*"

Assuming that appellant used compounds consisting of new materials, etc., in the making of his ultimate product, the fact remains that he made no claim for patentability of a new product independently of using it.

■ We are not convinced that appellant made a product different in a patentable sense from the products described in the prior art cited.

Nothing patentable over Callsen's ultimate product is found in appellant's ultimate product.

The Gornitz et al. patent discloses throughout that the product was developed to be used for the prevention of ravages by insects upon seeds. It did not claim its use for the purpose developed, supposedly for the reason that every person possessing ordinary intelligence, even if not "skilled in the art" of immunizing seed, would understand the purpose.

Owing to the fact that appellant's product does not differ patentably from those disclosed by the prior art, and as the prior art teaches that products of the general type as that defined by the appealed claims are useful in "protecting organic materials [such as seeds] subject to attack by plant pests and microorganisms," the claims on appeal, which define no particular method of treatment, are clearly not patentable over the references of record.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.

BLAND, Associate Judge (specially concurring).

I agree that, in view of the product being old or so similar to other products in the prior art as to suggest its use as a disinfectant, appellant is not entitled to a patent for a method of protecting organic materials with the use of his stated materials.

I concur specially because it is settled law that one may have a patent for a method of treating plant life with an old substance, or even a patented substance (subject, of course, to the patent), if its application as a disinfectant was new, unobvious, and useful. Since the majority opinion does not clearly so state and since the latter part of the opinion is so limited in its discussion of the differences between the inventor of a product and the inventor of a process as not to distinctly differentiate between the disinfectant product and the process of using it I feel called upon to cite and discuss the authorities mentioned below.

It is not sufficient to say, in answer to the claim of a discoverer of a new method of using an old product, that a patentee of a product is entitled to all of its uses and that the public is entitled to all unknown uses of a non-patented product. To that effect, I think the holding in Re Thuau, 135 F.2d 344, 346, 30 C.C.P.A., Patents, 979, should be modified. The following portion of the Thuau case is, in my view, repugnant to settled law on the question:

"It is our opinion that not only is the weight of authority contrary to appellant's contention, but that it is clearly contrary to the spirit, and in our opinion contrary to the letter of the patent laws that patents should be granted for old compositions of matter based upon new uses of such compositions where such uses consist merely in the employment of such compositions.

\*    \*    \*    \*    \*    \*

"The doctrine is so familiar as not to require citation of authority that a patentee is entitled to every use of which his invention is susceptible, whether such use be known or unknown to him. Likewise, with regard to an unpatentable article or substance long in use, any member of the public has the right to every use of which the article or substance is susceptible so long as it is unchanged in any way, regardless of whether or not such uses were known prior to his own use."

Of course, any patentee is entitled to every use of his material. This does not prevent another from getting a patent upon the use of the patentee's particular material as a disinfectant if that use was not obvious and was foreign from its known use. The new inventor, however, could only practice his invention with the consent of the patentee, but with such consent he could prevent others from using it as a disinfectant and on the expiration of the article patent he would have a monopoly on its use as a disinfectant.

The latter part of the majority opinion implies, I think, that one cannot get a method patent for the use of an old compound as a disinfectant. This portion of the opinion would seem to suggest that unless he was the inventor of the compound he is not entitled to a patent for a method of its use in immunizing seeds.

While the opinion does not cite the Thuau case, the Solicitor for the Patent Office has quoted abundantly from it in his brief and states:

"Involved in the issues presented by the present appeal is the question whether application of the doctrine of In re Thuau, supra, can be avoided by calling the use of an old compound a process, and expressing that use in claims drawn in broad method form. Single step method claims of the same character as those here appealed have previously been before this Court as in Re Christensen, 82 F.2d 715, 23 C.C.P.A. [Patents] 1015, 468 O.G. 277; and In re Jones, 120 F.2d 1019, 28 C.C.P.A. [Patents] 1302, 533 O.G. 1052, but the Court apparently has not heretofore had reason to pass upon the question which this appeal raises.

"*The Board has several times ruled that where invention is involved in the discovery of the asserted new use of an old compound, that new use may be protected by a process patent.* Ex parte Chamberlain, 2 U.S.P.Q. 145; Ex parte Kurtz, 15 U.S.P.Q. 149; Ex parte Bosland, 44 U.S.P.Q. 695. Conversely, where the new use is obvious, such protection should be denied. The use of the compounds here claimed by Migrdichian for, generally, treating organic materials, and, specifically, immunizing

seed, is an obvious use." [Some italics mine.]

It would seem from the foregoing that the Solicitor, in view of the authorities cited, is of the opinion that a new use of an old compound may be protected by a process patent if its use was not obvious, and apparently he is inviting comment upon the Thuau case and does not urge its soundness.

I think the majority, while in effect applying the doctrine of the Thuau case, should frankly discuss it and rely upon it if they are of the opinion that it is controlling in the instant case.

I shall briefly analyze the authorities cited, supra, by the Solicitor and other authorities relating to the question as to the propriety of granting method claims in a patent for a new, unobvious and useful purpose of an old compound, etc.

Ex parte Chamberlain, 2 U.S.P.Q. 145, involved a method of pickling metals. It was found that the pickling bath itself, containing the particular proposed reagent, was not anticipated by the prior art, and the examiner was of the opinion that the bath could be allowed as a new pickling bath. Under these circumstances, the Board of Appeals said:

"* * * we believe it is equally true that a new process is involved in applying it [the bath]. Such process should include the positive step of immersing metal in the bath containing the essential identified ingredients."

Ex parte Kurtz, 15 U.S.P.Q. 149, involved a method of securing rubber to metal. The general steps of the process were old. The board held applicant's material was not the same as that of the prior art references and stated:

"Patents are frequently granted and sustained for improved processes wherein the improvement resides solely in the substitution of a material not known to be an equivalent. The case of Tolfree v. Wetzler [3 Cir.] 25 F.2d 553 is illustrative. * * * Their equivalency may be apparent after appellant's teaching but their availability is in no way suggested by any cited art."

The case cited by the board, Tolfree v. Wetzler et al., 3 Cir., 25 F.2d 553, involved a method of stopping leaks. An old composition, gambier (extract from certain trees or shrubs), which "had been used for years in the tanning art and in other ways" and whose "qualities were known" was used in suspension in water to stop leaks. Such use was held to be invention.

Ex parte Bosland, 44 U.S.P.Q. 695, involved the method of sizing cellulose textile materials. The prior art showed a similar composition used for an entirely different purpose. In its decision the board stated, "Assuming the composition per se to be old, this case involves the protection of a new use thereof," and allowed the claims.

Ex parte Bosland, 44 U.S.P.Q. 696, a companion case of the Bosland case, supra, is even stronger in its statement of the well settled rule.

The following statement from Corpus Juris (48 C. J. 77) summarizes the law on this point:

"[§ 84] 17. Application to New Use. The application of an old method or device to a similar or analogous subject with no change in the manner of applying it and no result substantially distinct in its nature is not invention. This is true, even if the new form of result has not before been contemplated, and regardless of how remote the new use may be from the old if no changes or modifications in the old device are necessary to adapt it to the new use. Invention is not involved in the mere conception of applying an old method or device to a new use. Even though changes or modifications are essential to the practical application of the method or device to the new use, invention is not involved if the new use is so analogous to the old that the thought of adapting the device and applying it to the new use would occur to a person skilled in the art and seeking to devise means to perform the desired function. The adaptation of the new device does not constitute invention, even though advant-

ages not otherwise procurable are attained. *On the other hand, invention is involved where the new use is so remote from that to which the method or device has been applied, or for which it was conceived, that the thought of making the necessary modifications and changes and applying it to the new use would not occur to a person skilled in the art and seeking means by which the desired function could be performed.* It is immaterial that once given the thought of applying the old method or device to the new use, the changes or modifications necessary to make the thought practical are obvious." [Italics added.]

From Walker on Patents, Deller's Edition, Volume One, pages 226 et seq., the following statements are quoted:

"It is not invention to use an old process for a new and analogous purpose. * * *

"An old composition of matter applied to a new and analogous use does not involve invention.

"It may be invention, to use an old process, machine, manufacture, composition of matter, or design, for a new and non-analogous purpose. (Potts v. Creager, 155 U.S. 597, 608 [15 S.Ct. 194, 39 L.Ed. 275]; etc., etc.)

The courts have held that, while gravity is a simple, well understood force, a novel application of it to increase utility in an existing machine may be invention of a high order. (Eibel Process Co. v. Minnesota [& Ontario] Paper Co., 261 U.S. 45, [43 S.Ct. 322, 67 L.Ed. 523].)"

It should be noted that all of the appealed claims involved in the instant case are method claims and that the latter part of the majority opinion stresses the fact that appellant was not the inventor of the product.

I agree that in the instant case the appellant, in his claims, defines an obvious use of an old compound, or one so closely related to the old one that its use as a disinfectant would be obvious, and he is not entitled to the allowance of his claims.