**NORTHAM WARREN CORPORATION v. D. F. NEWFIELD CO., Inc., et al.**

**No. 6971.**

District Court, E. D. New York.
July 26, 1934.

774

Mock & Blum, of New York City (Asher Blum, of New York City, of counsel), for plaintiff.

Bartlett, Eyre, Scott & Keel, of New York City (Richard Eyre, of New York City, of counsel), for defendants.

GALSTON, District Judge.

This is a patent infringement suit in which infringement is alleged of letters patent No. 1,467,614, granted September 11, 1923, to Charles W. Eads, for a finger nail cleaning compound; and of patent No. 1,819,004, granted August 18, 1931, to Walter C. Roessinger, for an invention of a toilet article, which, in the course of the trial, was referred to as a "manicure pencil."

The specification of the Eads patent states that the invention relates to a cleansing and bleaching compound adapted to be used for removing accumulations on finger nails and bleaching the finger nails. This compound is shaped as a shaft, and consists of a bleaching element, an abrasive substance, and a binder, and of the consistency of a semisolid.

The inventor states that in forming his compound he has found that any number of binders such as paper pulp, clay, wax, tallow, soap or the like may be used, mixed with predetermined proportions of a bleaching element, such as any of the alkaline salts or acids or ammonia, peroxide of hydrogen, or listerine, to which there is added an abrasive or cutting substance such as chalk, pumice, or whiting. The specification states: "It is to be understood that suitable quantities of the named elements or any parts or combinations thereof would be mixed in a desired proportion and permitted to set or attain the consistency of a semi-solid (the nature of which would be akin to a colored crayon)."

To facilitate the use of the compound and to prevent it from breaking and to facilitate its handling, a casing is provided so that the article may be carried much in the same way as a pencil or pen.

Claims 1 and 5 are in issue, and they read:

"1. A finger nail cleaner comprising a cleansing compound shaped as a shaft in combination with means for containing said shaft."

"5. A finger nail cleaner comprising a semi-solid cleansing compound shaped as a shaft and capable of removing accumulations from beneath finger nails in combination with means for containing said shaft."

On June 6, 1934, after this action was pending, but before it was reached for trial, the plaintiff filed a disclaimer in the Patent Office as to these claims, stating that it disclaimed from the scope thereof any shaft, save one, which has a substantially white color and which includes a water soluble binder. It will be noted that this disclaimer was filed eleven years after the patent issued; and the alleged ground on which the disclaimer is based is, "that it has reason to believe that through inadvertence, and without fraudulent and deceptive intention, the specification and claims of said letters patent are too broad, including that of which said patentee, Charles W. Eads, was not the first inventor."

The defendants contend that the disclaimer put new matter into the claims; that the new matter is implicit to the disclosure of prior art patents; that there is no showing of inadvertence, accident, or mistake; and there is no explanation of the long delay.

I think the testimony of Professor Masson makes it reasonably clear that the disclaimer does not inject new matter. He stated that for all practical purposes the binders suggested by Eads were water soluble; also that white was the natural and unavoidable color of the compound. The effect of the disclaimer was to narrow the scope of the claims; and the witness shows

that the necessary implication of the' specification justified the limitation added to the claims.

■■ There is a showing of inadvertence made in the history of the proceedings as set forth above. The Eads was a paper patent that was acquired by the plaintiff only as a matter of expediency, and there was no reason for seeking a correction until this suit was instituted. The record does not indicate either that the defendants were in any degree prejudiced by the delay. Thus no question arises of intervening rights, or of estoppel or bar.

■ I proceed then to the validity of the patent and the matter of infringement.

The defendant, Swan Pencil Company, Inc., contests infringement on the ground that the defendant's crayon does not contain an effective abrasive nor any bleach; also that it cannot be called a semisolid, and that it does not clean the nails, but coats or paints them.

The analysis of the Swan manicure pencil compound made by plaintiff's expert, Fuller, is severly criticised by defendants' expert, Herstein. The former reported, among other constituents, kaolin, commonly called clay. This is not a chemical entity which is determined per se in a chemical analysis. If the analyst finds two separate things, alumina and silica, and if the .ratio between the two is such as would correspond reasonably with the composition of kaolin, then kaolin may be reported as the sum of the alumina and the silica.

As to the titanium oxide, the figures given by the two experts disagree largely because of the difference in process of analysis. Herstein's inference is that the figure give by Fuller of titanium oxide contains some alumina derived from the clay, and that silica would be 'left, but not in excess of the amount required to combine with the alumina to form kaolin. Herstein concludes that the free silica figure which witness Fuller reported is in fact part of the kaolin content.

The large percentage of silica found by Fuller compels the belief that the pencil would possess a higher abrasive quality than those manufactured by the defendants.

The white clay of the defendants' pencil is not an abrasive element. The clay mixed with water forms a pasty substance, which is not abrasive. Moreover, the defendants' pencil coats the finger nail, while there is no suggestion in the Eads patent that the compound described is intended to coat the nail.

It is true that the patentee refers to a bleaching element, "such as any of the alkaline salts or acids or ammonia, peroxide of hydrogen, 'listerine' and the like." These elements certainly would clean, or as Herstein says, would emulsify the dirt so that it could readily be washed away, but would not coat. Nor is that function described in the following passage of the Eads specification: "A shaft of the compound described, may be thus effectively used for removing accumulations from beneath the finger nails, the abrasive material in the said shaft tending to cut or remove the clinging dirt, but at the same time wearing away sufficiently to rub the bleaching element against the under side of the nail to whiten or bleach the same."

Certainly, this is not a coating action, and I cannot understand how any of the bleaching elements named in the specification would coat the nail.

It may be noted too that not only is the abrasive element of the Eads patent absent from the Swan pencil, but whether one accepts the analysis of either Fuller or Herstein, the constituents of the Swan pencil do not form a cleansing compound, as defined in the Eads patent. The presence of the pointed orange wood in the Swan pencil is for the purpose of removing the dirt below the nail.

It should also be observed that the Swan pencil functions differently from the Cutex; and if the latter product is supposed to embody the Eads invention, the difference in function is significant. As compared with the Swan pencils, the Cutex are very hard and stiff and cannot make a mark on paper. It is this hardness and stiffness which make them effective as scrapers.

I conclude, therefore, for the reasons hereinbefore set forth, that the defendants do not infringe the Eads patent.

■■ The Roessinger patent relates particularly to whitening the under sides of the finger nails.

The main defense to this patent is a prior use. The Swan Pencil Company, Inc., is a dealer in pencils, and is the exclusive selling agent in the United States of the Swan Pencil Company of Nuremberg, Bavaria. This latter company manufactured a pencil known as the Stabilo. These were art crayons, which included a white crayon.

But there are several of these in evidence. A box of such pencils, including a white one, was brought by the defendant's witness, Gombarts, from Germany in 1928. Exhibit NN, or the white chalk, Exhibit OO, was in the defendant's Hosselet's, possession since 1928. Another Stabilo pencil exhibit was in the possession of plaintiff's witness, Johnston, since early in 1930.

The Stabilo pencils and the Swan manicure pencils which are alleged to infringe the patents are functionally the same, whether used as a writing implement when dry, or whether used either on paper or the finger nail when wet; and as to substance they are also alike.

Under cross-examination plaintiff's expert, Masson, was asked to compare the 1930 Stabilo pencil, which had been produced by plaintiff's witness, Johnston, with defendants' Exhibit RR, a Stabilo pencil, as follows:

"XQ240. Without referring to any substantial question of degree, would you say that each of these pencils is one having a white coating composition which is hard and stiff under normal atmospheric conditions, will slowly soften when moistened and adhere to the nail when rubbed thereon in moistened condition, and then harden to form a white coating on the nail? A. Yes.

"XQ241. As far as substance is concerned, they are alike? A. Yes."

Since the Roessinger application was filed October 10, 1930, after the Stabilo pencil was known in the United States, it appears that if the defendants' pencil infringes the claims of the Roessinger patent, then the Stabilo pencil anticipates. It is true that the Stabilo pencil, so far as the record shows, was not used prior to Roessinger as a manicure pencil; but the discovery of a new use is generally not invention. As was said in H. K. Regar & Sons, Inc., v. Scott & Williams, Inc. (C. C. A.) 63 F.(2d) 229, 231: "But a new use of an old thing or an old process, quite unchanged, can under no circumstances be patentable; not because it may not take as much inventiveness to discover it, as though some trivial change were necessary, but because the statute allows patents only for a new 'art, machine, manufacture or composition of matter' (section 31, title 35, U. S. Code [35 USCA § 31])."

I hold, therefore, that the defendants' pencils do not infringe the Roessinger patent.

Defendants may have a decree dismissing the complaint.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.