**M. & B. MFG. CO., Inc., v. MUNK et al.**

**No. 365.**

Circuit Court of Appeals, Second Circuit.

May 6, 1935.

John W. Remer and Howard P. King, both of New York City (Joseph J. O'Brien, of New York City, of counsel), for appellants.

Morris Kirschstein, of New York City (Kommel & Rosenberg, of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The sole question in this case is as to the validity of claims 6 and 7 of reissue patent No. 18,100, issued on June 16, 1931, to Mersfelder & Balze. The patent is for a "clean-out" plug in a waste pipe; omitting details which are included in the other claims but not in those in suit, it is of very simple construction. "Clean-out" openings are necessary to give access to traps in waste pipes when they get clogged, and it had been the common practice to set an open ferrule or sleeve into the pipe, to thread the inside of it and to fit into it a threaded plug, which was screwed home; the threads of both members being in contact throughout their length. As the plug is never removed except to clean out the trap, it might stay in place for years and when the time came to unscrew it, it was frequently found to be "frozen"; that is, the threads had either rusted together or become otherwise too tight to be backed apart. It was not unusual to be obliged to break out the plug to get an opening to the pipe. Moreover such a plug would fit only a sleeve of exactly the right caliber. The patentees disclosed a plug in the form of the frustum of a cone with marked taper, threaded as before, and fitting into the old

cylindrical threaded sleeve. The result was that only a few of the threads of the plug touched those of the sleeve and the surface of "freezing" was correspondingly reduced. Such a plug would fit any sleeve from the largest that its base would engage to the smallest that its apex would enter. This did not indeed exhaust the invention; the plug as disclosed was made of two metals, a hard inner core and a soft outside, the threads of which were not angular at their troughs or "roots," but flattened or filled in with metal, so that the edges of the hard metal threads of the sleeve cut into them, displacing the metal and making a tight fit. This last feature was in the only two claims with which the patent originally issued, but a prototype of those now in suit, which are without it, was introduced in the first of the three reissues; we shall arguendo assume that the disclosure will bear the extension. The invention of the original claims acquired substantial acceptance, the plaintiff's sales going to 100,000; it has very largely displaced earlier devices and has proved of great service, especially because of its adjustability to sleeves of varying sizes. The defendants' plug is made of brass, also the frustum of a cone; its threads are sharp and angular at the "roots"; it does not infringe the original claims, but it does infringe the claims in suit. Thus the whole question is of validity.

The use of threaded plugs, shaped as cones or frusta, began long ago and has been continuous: Bulkley, No. 1598 (1840); Fellows (1858) British No. 2944; Brien, No. 126,869 (1872); Ansorge, No. 265,360 (1882); Jones No. 441,418 (1890); Bernardi, No. 658,313 (1900); Gillon No. 936,444 (1909); Wille No. 1,219,206 (1917). None of these were disclosed as complements to cylindrical sleeves; all that were used with sleeves at all had conical sleeves and when set in place, the threads of the plug and of the sleeve touched throughout their length. They were as likely to "freeze" as a cylindrical plug. Yet it is worth observing that such plugs would be even more adjustable to conical sleeves of varying caliber than the patented plug to cylinders; because they could be used with a sleeve whose outside edge was larger than the base of the plug, while the patented plug is limited to a sleeve whose opening will engage its base. Moreover, their use with too big or too little sleeves would shorten the "freezing" area. We mention these things, not because such plugs anticipated the in-

vention at bar, but to show how slight was the step necessary to claims 6 and 7. That step seems to us to have been taken by Nichols, No. 1,316,969 (1919). This was for a "clean-out" plug, and is the same as the patented plug except for an exterior flange which covers the end of the sleeve on the outside, gripping it between itself and the threaded wall of the plug. More properly, the upper edge of the sleeve is forced or jammed up between plug and flange by the screw action of the threads. The only other difference suggested is in the degree of taper of the plug, the claims in suit specifically requiring that only "a fractional section of the plug" shall engage the threads of the sleeve. But Nichols shows just that in figures 2 and 3 and discloses it by speaking of only "the upper edge of the wall" as "firmly gripped between the two flanges" (page 1, lines 28–30; lines 75, 76); his first four claims have the same feature as a constituent. Thus, as we have said, nothing distinguishes Nichols but the outer flange, 17, in figure 2. Unless this in some way prevents his plug from being used like the plug at bar, the disclosure was an anticipation; the flange may have been a patentable addition, but still it was only an addition, and it would not have avoided infringement of claims 6 and 7, had it first appeared after the patent. It is of course true that if Nichols' plug were used with smaller sleeves whatever advantage there is in the flange, 17, would be lost, and the whole of the invention would not be used. But all that the claims in suit demand would still be present, for they do not include the flange. The only possible qualification to this last arises from that element in claim 6 which reads, "whereby said plug may be used with members having threaded openings of substantially varying sizes." This feature of adjustability to sleeves of different caliber, "flexibility," the plaintiff makes much of in its evidence; its witnesses assert, and we may take it as true, that it has been the chief source of the popularity of the plug. It is true that Nichols never thought of this, for, as we have just said, his flange, which was an element of all his claims, would not function in sleeves of smaller caliber. But it is not necessary that the prior art should disclose an appreciation of all the uses to which it can be put; were this not true, it would be possible to patent new uses. It is enough to anticipate if the earlier device is susceptible of the new use, as it stands and without change,

Nichols' plug was susceptible of use with sleeves of different caliber, though perhaps not of "substantially" different caliber, for his figures showed only a slight taper. We do not say that invention may never depend upon a critical point in a continuous process. Eibel Process Co. v. Minnesota & Ontario P. Co., 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523. There is no such point here; the most that the inventors can claim is to have discovered that plugs with a large taper will fit more sleeves than plugs with a small one. Certainly there was no invention in that, given plugs with more than a theoretical taper. We are not sure that Higbee's two patents, No. 597,000 (1898), and No. 658,087 (1900), did not also disclose enough to invalidate the patent. Clearly they were for a tapered member intruding upon a cylindrical sleeve, both threaded; it is not clear that the threads touched throughout their length. But the male member was not a plug and the taper was so little as only doubtfully to prevent "freezing." At any rate we need not rely upon these, save as they show that the general notion was not new. Nichols is enough, not indeed to invalidate the original claims, but to put an end to those in suit.

Decree reversed; bill dismissed.