30 C.C.P.A.(Patents)

**In re THUAU.**

**Patent Appeal No. 4737.**

Court of Customs and Patent Appeals.

April 5, 1943.

George B. Schley, of Indianapolis, Ind. (Frank M. Nolan, of Brooklyn, N. Y., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (Clarence W. Moore, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the Primary Examiner rejecting claims 1 to 4, inclusive, 7 and 25 of appellant's application for a patent. One of claims 5 and 14 and one of claims 16 and 24 were also rejected. Certain other claims were also rejected, as to which no appeal was taken. Twelve claims were allowed by the Primary Examiner.

As stated in appellant's brief: "The invention of the appeal claims relates to a therapeutic product for the treatment of diseased tissue, which product comprises a water-soluble condensation product of metacresolsulfonic acid and an aldehyde, such as formaldehyde. This therapeutic product is especially useful in the treatment of cervicitis, cervical erosions, and related ailments."

Claims 1 to 4, inclusive, 7 and 25 were rejected as unpatentable over the cited prior art. With respect to the remaining claims, one claim in each of the following groups was rejected, viz., 5 and 14, and 16 and 24, upon the ground that the claims in each group were duplicates of each other.

Claim 1 is illustrative of the claims rejected upon the cited prior art. "1. A new therapeutic product for the treatment of diseased tissue, comprising a condensation product of metacresolsulfonic acid condensed through an aldehyde."

Claims 5 and 14 are illustrative of the groups of which one of each group was rejected as aforesaid.

"5. A new therapeutic product for the treatment of diseased tissue, comprising a condensation product obtained by condensing substantially pure metacresolsulfonic acid with an aldehyde.

"14. The reaction product of substantially pure metacresolsulfonic acid and an aldehyde."

The references cited are: Badische (German) 291,457 April 13, 1916; Stiasny 1,232,620 July 10, 1917; Stiasny 1,237,405 Aug. 21, 1917.

In view of the questions presented to us for decision, it is unnecessary to discuss the references.

Appellant's brief stated: "Each of these references (R. 33–49) discloses, as tanning agents, condensation products of a cresol with formaldehyde. For purposes of this appeal and to simplify the issues, appellant will limit his discussion of the claims rejected on the prior art to the question of whether the products defined involved a new and unobvious use—namely, a therapeutic product for the treatment of diseased tissue."

In view of this statement on behalf of appellant, the sole question with respect to claims 1 to 4, inclusive, 7 and 25 is whether a new and unobvious use for an old composition renders claims for such use patentable.

The composition here claimed is a condensation product of metacresolsulfonic acid condensed through an aldehyde. This product had long been known, but so far as the references disclose, its use had only been for tanning purposes.

Some of the references disclosing the composition are patents which have long since expired, and the other references are publications.

Appellant discovered that this old composition is useful for the treatment of diseased tissue. He has in no way changed the composition for such new use, and as stated the question before us is whether a new and unobvious use for an old composition, without change in or addition to that composition, is patentable.

Appellant cites the following authorities in support of his contention that such new use of an old composition may be patentable, viz.: Danbury & Bethel Fur Company et al. v. American Hatters & Furriers Co., Inc., 2 Cir., 54 F.2d 344, 12 U.S.P.Q. 207; General Electric Company v. Hoskins Manufacturing Company, 7 Cir., 224 F. 464; Gilbert Spruance Company v. Ellis-Foster Company, 3 Cir., 114 F.2d 771, 46 U.S.P.Q. 535; In re Sibley, 88 F.2d 960, 24 C.C.P.A., Patents, 1143, 33 U.S.P.Q. 212; In re Sibley, 88 F.2d 964, 24 C.C.P.A., Patents, 1155, 33 U.S.P.Q. 216.

Of these cases, only that of General Electric Company v. Hoskins Manufacturing Company, supra, seems to sustain appellant's contention.

The case of Danbury & Bethel Fur Company et al. v. American Hatters & Furriers Company, Inc., supra, involved the use of an old substance in a *new* composition.

Gilbert Spruance Company v. Ellis-Foster Company, supra, involved the patentability of an old substance incorporated with nitro-cellulose.

The cases of In re Sibley, 88 F.2d 960, 24 C.C.P.A., Patents, 1143, and 88 F.2d 964, 24 C.C.P.A., Patents, 1155, involved a new composition including an old substance, and in each of said cases it was held that the *new* composition was patentable.

We have found no case other than that of General Electric Company v. Hoskins Manufacturing Company, supra, which holds that an old composition per se may be patentable when put to a new use.

It is our opinion that not only is the weight of authority contrary to appellant's contention, but that it is clearly contrary to the spirit, and in our opinion contrary to the letter of the patent laws that patents should be granted for old compositions of matter based upon new uses of such compositions where such uses consist merely in the employment of such compositions.

In the case of H. K. Regar & Sons, Inc., v. Scott & Williams, Inc., 2 Cir., 63 F.2d 229, 231, the court said: "When old devices are changed at all, the change may be dictated by a new conception, which it took originality to conceive. Strictly, the old device is not then put to a new use; the new use begets a new device. In such cases it requires but little physical change to make an invention. Traitel Marble Co. v. [U. T.] Hungerford B. & C. Co., [2 Cir.], 18 F.2d 66, 68; H. C. White Co. v. [Morton E.] Converse [& Son, 2 Cir.], 20 F.2d 311, 313. But a new use of an old thing or an old process, quite unchanged, can under no circumstances be patentable; not because it may not take as much inventiveness to discover it, as though some trivial change were necessary, but because the statute allows patents only for a new 'art, machine, manufacture or composition of matter' (section 31, title 35, U.S.Code [35 U.S.C.A. section 31]). The test is objective; mere discovery will not do."

In the case of Northam Warren Corporation v. D. F. Newfield Co., Inc., et al., D.C., 7 F.Supp. 773, 776, 22 U.S.P.Q. 313, a patent for a white pencil intended for cleaning finger nails was held invalid because of the prior use of the same kind of pencil made of the same material, but used as a writing element, upon the ground that

the "discovery of a new use [for an old device] is generally not invention."

In the case of M. & B. Mfg. Co., Inc., v. Munk et al., 2 Cir., 77 F.2d 261, 262, there was involved the validity of certain claims in a patent for a "clean-out plug" in a waste pipe. The use of threaded plugs of the same general character was shown to be old. In holding the claim invalid the court said: " * * * it is not necessary that the prior art should disclose an appreciation of all the uses to which it can be put; were this not true, it would be possible to patent new uses. It is enough to anticipate if the earlier device is susceptible of the new use, as it stands and without change. * * *" See also Krupp Nirosta Co., Inc., et al. v. Coe, Com'r, of Patents, 68 App.D.C. 323, 96 F. 2d 1013.

This question in principle was directly decided by this court in the case of In re Parker, 107 F.2d 612, 615, 27 C.C.P.A., Patents, 717, wherein was involved the patentability of an old composition, the claims reciting its use as a body deodorant.

In our opinion in that case we said: "The mere fact that appellant has discovered that a composition composed of sodium bicarbonate and from 2 to 25 per centum or more of sodium perborate possesses deodorizing properties, and that such a composition may, therefore, be used as a body deodorant, does not, in view of the fact that the composition is old, entitle him to the allowance of the appealed claims. [Citing cases.]"

The doctrine is so familiar as not to require citation of authority that a patentee is entitled to every use of which his invention is susceptible, whether such use be known or unknown to him. Likewise, with regard to an unpatentable article or substance long in use, any member of the public has the right to every use of which the article or substance is susceptible so long as it is unchanged in any way, regardless of whether or not such uses were known prior to his own use.

To allow a patent for an old composition without change in any way, merely because it may be used for a specified purpose, would result in a situation where two compositions of exactly the same character could be sold by merchants to consumers, but if one of the compositions was not made by the patentee or his assignee or licensee, the merchant might be liable to suit for infringement if the composition was used by the purchaser for therapeutic purposes, and the user would certainly be liable to such a suit.

In our opinion the patent laws do not contemplate that two identical substances or devices may be legally sold side by side, only one of which is the subject of a valid patent, and we are in agreement with the view expressed in the case of H. K. Regar & Sons, Inc., v. Scott & Williams, Inc., supra, that a patent for a new use for an old substance quite unchanged is not authorized by the patent laws because such use is not the invention or discovery of "any *new* and useful art, machine, manufacture, or *composition of matter,* or any new and useful improvements thereof" as required by Section 4886 of the Revised Statutes, U.S.C. Title 35, Sec. 31, 35 U.S.C.A. § 31. (Italics ours.)

That appellant has made a valuable discovery in the new use of the composition here involved we have no doubt, and it is unfortunate for him if he cannot make claims adequate to protect such discovery, but to hold that every new use of an old composition may be the subject of a patent upon the composition would lead to endless confusion and go far to destroy the benefits of our patent laws.

For the reasons stated we find no error in the decision of the board respecting claims 1 to 4, inclusive, 7 and 25.

With respect to the claims grouped by the examiner, viz., 2 and 15, 4 and 19, 5 and 14, 23 and 25, and 16 and 24, he stated as follows: "One claim in each of the following groups of claims is rejected, i. e., (a) 2 and 15; (b) 4 and 9; (c) 5 and 14; (d) 23 and 25; and (e) 16 and 24. The claims in each group are duplicates of one another except that one claim has the limitation 'A new therapeutic product'. It is considered that one claim is unpatentable over the other. The mere recitation of an inherent property does not render one claim patentable over the other. Applicant is merely multiplying the number of claims. A person skilled in the art knows that aromatic hydroxy compounds generally have therapeutic properties and hence, would know that applicant's products would have therapeutic properties. Thus, the claims containing the therapeutic limitation are unpatentable over the product claims, since they fail to bring out any patentable distinction."

With respect to these claims, appellant in his reasons of appeal refers only to the groups, claims 5 and 14, and 16 and 24, and therefore only these groups need be considered by us.

Claim 14 recites a reaction product per se, and claim 5 recites the same product as "a new therapeutic product for the treatment of diseased tissue." Likewise, claim 16 recites a product per se, while claim 24 is for the same product plus the recital that it is for the treatment of diseased tissue.

While the examiner did not expressly so hold, we must assume that he regarded one of each pair of these claims as patentable, for he rejected none of them upon the prior art.

The examiner held that one claim of each group was the equivalent of the other claim in that group, or, in other words, from the standpoint of patentability, they are merely duplicate claims.

Unfortunately the Board of Appeals did not discuss or even refer to this holding of the examiner, but on the contrary, it assumed apparently that all of the claims had been rejected upon the references. Its decision states: "We agree with the examiner that the appealed claims are not patentable over the art cited, for in carrying out the methods set forth in the references such as in Wolesensky it is certain that some of the product will be metacresolsulfonic acid condensed through an aldehyde as well as other isomers."

Previously in its decision it intimated that claims for a substantially pure metacresolsulfonic product (such as claims 5, 14, 16 and 24) were unpatentable. Upon this point the decision states: "It is well known that there are three different isomers of cresol, the ortho, meta and para forms. Commercial cresols usually are a mixture of all three and since they have boiling points which are quite close together, separation of the same appears to be difficult. A number of the claims are limited to a substantially pure metacresolsulfonic acid product, but no explanation is given as to how this product is prepared. It is also shown to be old in the art cited to form the condensation product by the use of an aldehyde. The chemistry of the product is not understood, but on page 7 of the brief there is given a probable form of the reaction product. Whether or not one molecule of one isomer will condense with a molecule of a different isomer is a matter of conjecture. It is not clear whether or not the condensation product obtained from two different isomers would have a different therapeutic effect over a condensation product consisting of the condensation of two like isomers is not explained."

Notwithstanding the foregoing the board affirmed the decision of the examiner.

It is our opinion that if the board intended to reverse the decision of the examiner as to any of these claims, it should have expressly so held, as provided by Rule 139 of the Rules of Practice in the United States Patent Office, 35 U.S.C.A. Appendix.

■ As we construe the holding of the examiner, the applicant was given the option of cancelling one claim of each group, in which case the other claim of the group would be allowed, and we must assume that the general affirmance by the board included approval of this holding of the examiner.

With this premise, it is our view that the examiner, in the paragraph quoted from his statement, based his holding upon two grounds:

1. That claims 5 and 24 merely recite an inherent property of the product claims 14 and 16, and

2. That one skilled in the art would know that the product claimed alone would have therapeutic properties.

In his summary in his "Statement" only the first ground of his holding was referred to.

We may ignore the second part of the examiner's holding, for we are in full agreement that the first ground stated by him fully justified his conclusion.

Appellant contends that claims 5 and 24 do not recite any property of the reaction product. If they do not, then appellant discovered nothing. If the reaction product defined in claims 5 and 24 does not have an inherent property valuable in the treatment of the diseased tissue, then there is no basis for the preamble in said claims.

This is so clear as to require no further discussion.

■ For the reasons herein discussed in the consideration of claims rejected upon the prior art, we are in full accord with the view of the examiner that claims 5 and 14 are from a patentable standpoint

duplicates of each other, and the same is true of claims 16 and 24, and only one claim of each group should be allowed.

For the reasons stated herein the decision appealed from is affirmed.

Affirmed.