37 C.C.P.A. (Patents)

### Application of THOMAS.

Patent Appeal No. 5621.

United States Court of Customs and Patent Appeals.

June 28, 1949.

Rehearing Denied Dec. 12, 1949.

Cushman, Darby & Cushman, Washington, D. C. (William M. Cushman, Max C.

Louis, Carroll F. Palmer, Washington, D. C., and Albert B. Griggs, Wilmington, Del., of counsel), for appellant.

W. W. Cochran (J. Schimmel, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL and JOHNSON, Judges.

JACKSON, Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner, rejecting all of the claims, 32 to 37, inclusive, and 40 to 45, inclusive, of an application for a patent, serial No. 502,828, filed September 17, 1943, alleging new and useful improvements in "Insecticidal Compositions."

It is stated in the application that the invention relates to the production of compositions valuable as pest control agents, and especially as insecticides. The materials said to be suitable for such use comprise one or more isomers of benzene hexachloride, or a solution thereof, in a diluent or carrier for the pest control material. It is said that the $\gamma$ (gamma) isomer or a mixture of isomers containing a substantial portion thereof, is the benzene hexachloride employed. Hexachloride is also known as "hexachlorocyclohexane."

· Appellant has moved to dismiss the appeal as to claims 32, 35, 36, 37, 43, 44, and 45, which motion will be granted, leaving for our consideration the rejection of claims 33, 34, 40, 41, and 42, reading as follows:

"33. An insecticidal composition comprising a toxicant and a carrier therefor in which the toxicant contains as an essential active ingredient benzene hexachloride from which isomers other than the $\gamma$ isomer have been at least partially removed.

"34. An insecticidal composition comprising a toxicant and a carrier therefor in which the toxicant contains as an essential active ingredient benzene hexachloride consisting predominantly of the $\gamma$ isomer.

"40. The method of insect control which comprises contacting the insect with $\gamma$ benzene hexachloride.

"41. The method of insect control which comprises contacting the insect with benzene hexachloride from which isomers other than the $\gamma$ isomer have been at least partially removed.

"42. The method of insect control which comprises contacting the insect with benzene hexachloride consisting predominantly of the $\gamma$ isomer."

The cited references are as follows:

Bender, 2,010,841, August 13, 1935; Wells, 2,238,714, April 15, 1941; Heilbron, Dictionary of Organic Chemicals, 1934 Ed., Vol. 1, page 127; Martin et al., Nature, 1944, pages 512 and 513; Fleck et al., Journal American Chemical Society, 1944, page 2095.

All of the claims were rejected as being too broad. Method claim 41 was further rejected on the ground of aggregation, it being held by the examiner that the process of purifying the compound has no patentable relationship to the use of the compound in an insecticidal composition. The board in affirming the decision of the examiner held that the claims are not adequately distinguishable from the disclosure in the Bender reference, which shows compositions comprising the crude mixture of all four isomers of benzene hexachloride.

The principal reference relied on is the patent to Bender relating to "addition chlorination" and the manufacture of chlorinated aromatic compounds, particularly those based on hydrocarbons of the benzene series, to form aryl chlorides. There is disclosed a process employed in the making of benzene hexachloride by the introduction of benzene into a body of liquid chlorine, "the addition of chlorine following smoothly and continuously in the liquid phase and in the absence of a catalyst such as light." The chlorine is kept at about minus 15° C. by maintaining a pressure on the containing vessel of about 4 atmospheres. The benzene is introduced in a continuous stream. It is stated in the patent that the literature reports four

benzene hexachlorides, all having the same molecular weight, 290.79, but melting at 112°, 129°, 157°, and 310° C., respectively. The final product of the patent is a mixture of those hexachlorides. It is also stated that benzene hexachlorides appear to be good insecticides for the reason that they slowly liberate hydrochloric acid vapor and are nearly water insoluble.

The patent to Wells relates to the purification of alkyl ethers of cellulose. There is disclosed a process of purifying those ethers. The patent was cited as illustrating the examiner's rejection of claim 41, among others not before us, as being aggregative.

The Heilbron reference was cited to show that the four isomers, $\alpha$ (alpha), $\beta$ (beta), $\gamma$ (gamma), and $\delta$ (delta), had been isolated and identified.

The Martin et al. and the Fleck et al. publications were cited by the examiner to contradict statements in certain affidavits of record. Those publications were not relied on in the rejection of any of the claims, and in view of the facts herein, it is unnecessary to consider them in that respect.

In rejecting the claims as being too broad, it was held that, as drawn, they fail patentably to distinguish from the crude mixture disclosed in the Bender patent. The state of the prior art to the date of appellant's application has been conceded, and is set out in a paper attached to one of the affidavits of record as Exhibit A, which is the reprint of a lecture delivered in England March 8, 1945, entitled, "The Isomer of Hexachlorocyclohexane (Gammexane), An insecticide with outstanding properties" by R. E. Slade, M.C., D.Sc. (Research Controller, Imperial Chemical Industries).

It appears in the exhibit that as early as 1912, Van der Linden separated and identified the alpha, beta, gamma, and delta isomers of benzene hexachlorides, $C_6H_6Cl_6$, which was first produced in 1825, the difference between the isomers depending upon the geometric proportions of the six chlorine atoms in the molecule. It further appears that late in 1942, specimens of alpha and beta isomers were prepared and their toxicity to insects investigated. It was found that those isomers were relatively inactive to weevils, the beta isomer being practically without toxic effect. It was pointed out that early in 1943, the gamma isomer was isolated and found to be more toxic to weevils than any substance which the investigators had ever tested. It was then established that the insecticidal action of the benzene hexachloride was due almost entirely to the presence of the gamma isomer, which was said to be present as an active principle in the crude mixture to the extent of 10—12%.

It is to be observed that article claims 33 and 34 and method claim 41 define a composition containing as a toxicant, benzene hexachloride, from which isomers other than the gamma isomer have been at least partially removed, and the article claims further provide a carrier for the toxicant. The board held that the diluting of an insecticidal toxicant with inert material is an almost universal expedient, and we have held that to combine an insecticide with a conventional liquid carrier is noninventive. In re Migrdichian, 108 F.2d 237, 27 C.C.P.A. Patents 806. Furthermore, the holding of the board just noted has not been challenged in the reasons of appeal.

With respect to the identical language contained in claims 33, 34, and 41, the board held that mixtures, immaterially different from the crude mixture of the patent, were included and affirmed the examiner's rejection for the reason that they "fail to adequately distinguish from compositions comprising the crude mixture of all four isomers which are disclosed by Bender as a satisfactory insecticide."

It is contended by counsel for appellant that the features which render claims 33, 34, and 41 patentable reside in the increased proportions of the gamma isomer, and that therefore those claims define benzene hexachloride patentably different from the crude mixture, which is disclaimed, for the reason that the gamma isomer is in greater concentration. It does not appear what the increased proportion of the gamma isomer is, either in the claims or in the specification. In the latter it is stated that a mix-

ture of isomers containing a substantial proportion of the gamma isomer is used.

The gamma isomer of benzene hexachloride is an old composition. In the patent to Bender, the benzene hexachlorides are stated to be good insecticides. Therefore it appears to us, as it did to the tribunals of the Patent Office, that the state of the prior art was amply sufficient to suggest the use of the gamma isomer as an insecticidal composition. Even though appellant may be said to have discovered which of the isomeric forms is the best insecticide, all that he has actually accomplished is to have found a new use for an old composition, and under the circumstances of this case, the discovery of such new use cannot be held to involve invention. In re Thuau, 135 F.2d 344, 30 C.C.P.A. Patents 979.

Article claim 34 differs from claim 33 in that the essential ingredient of the toxicant consists predominantly of the gamma isomer. It seems reasonable to conclude that the expression "predominantly" was properly considered by the board to mean at least 50% of the isomer. The introductory clause "An insecticidal composition" is clearly a use limitation and without patentable significance. In re Thuau, supra. Any patentable novelty that could exist in the claimed composition must, if at all present, be recited in the limitations "isomers other than the $\gamma$ isomer have been at least partially removed" and "consisting predominantly of the $\gamma$ isomer." It is not stated in the claims what proportions of the isomers other than the gamma isomer have been removed, and neither is it set out what the predominance of the gamma isomer is. It could well be that the partial removal of any one or all of the other isomers could be infinitesimally small, and also that the predominating gamma isomer could be over 50%. There is no rule or measure laid down by which one skilled in the art could distinguish the claimed composition in a patentable sense from the old composition of benzene hexachloride. Therefore, we consider the rejected claims as failing to distinguish adequately from the old composition comprising the crude

mixture of all four isomers which are disclosed in the Bender patent as a satisfactory insecticide, particularly in view of the conceded fact that the gamma isomer is an old composition.

Method claim 40 was included in the claims rejected by the examiner as being too broad. There was no separate discussion by the examiner or the board with respect to the rejection of that claim. But since the board in its decision did not expressly overrule such rejection, it stands as a general affirmance of the examiner's action. Apparently for the reason that in rejecting claims 40 to 45, inclusive, the examiner stated that they failed to recite operative proportions "since these claims are not limited to the gamma isomer as pointed out above," appellant urges that the claim is acknowledged to be patentable by the examiner for the reason that it is limited to the use of the gamma isomer alone, and that the board concurred in such acknowledgement.

In affirming the decision of the examiner that all of the claims are too broad, the board stated that since the gamma benzene hexachloride is old in the art and that since the teaching of the Bender patent is that the crude mixture of the four isomers is a good insecticide, the claims do not properly define appellant's contribution.

It is clearly demonstrated in the record that the gamma isomer is the toxic ingredient in the crude mixture of benzene hexachloride. It is also disclosed that benzene hexachlorides are good insecticides. Therefore, it is logical to hold that when the crude mixture is applied to an insect, it is being contacted with gamma benzene hexachloride, as called for in claim 40.

Counsel for appellant in their brief contend that claim 40 is patentable, relying on the case of In re Williams, 171 F.2d 319, 36 C.C.P.A. Patents ——. We are of opinion that the decision in that case does not support appellant's contention. In that case it was held that the existence of a compound as an ingredient of another substance does not negative novelty in a claim for a pure compound, although it may render such claim unpatentable for lack of invention.

We do not think it is necessary, in view of what has hereinbefore been stated with respect to the pertinence of the prior art herein, to discuss further the decision in the Williams case, supra. It suffices to say that, under the facts in this case and the reasoning set out herein, the doctrine of the Williams case cannot apply. Furthermore, in their brief before the board it was the position of counsel for appellant that "In the absence of art, there is no reason why his [appellant's] claims should be restricted to gamma isomer as the sole toxicant." We think that under such circumstances, as pointed out in the brief of the solicitor, the holding of the board, rejecting the claims as not properly defining appellant's discovery, is correct.

Method claim 41, as has been noted herein, defines the toxic substance exactly as is set out in claim 33, and our discussion of that claim is applicable to claim 41.

Method claim 42 defines the benzene hexachloride in the same language as it is defined in claim 34, and what we have said with respect to that claim applies to claim 42.

We deem it unnecessary to discuss the affidavits of record here for the reason that this opinion would be thereby unnecessarily lengthened. The appeal as to claims 32, 35, 36, 37, 43, 44, and 45 is dismissed, and the decision of the board as to claims 33, 34, 40, 41, and 42 is affirmed.

Affirmed.

By reason of illness, HATFIELD, Judge, was not present at the argument of this case and did not participate in the decision.