STUDIENGESELLSCHAFT KOHLE, mbH, Plaintiff,

v.

USX CORPORATION and Aristech Chemical Corporation, Defendants.

Civ. A. No. 85–236 LON.

United States District Court, D. Delaware.

Dec. 18, 1987.

---

Howard M. Handelman of Bayard, Handelman & Murdoch, Wilmington, Delaware; of counsel: Arnold Sprung, Nathaniel D. Kramer of Sprung Horn Kramer & Woods, New York City, for plaintiff.

Paul E. Crawford of Connolly, Bove, Lodge & Hutz, Wilmington, Delaware; of

counsel: William L. Krayer and Richard F. Lerach of USX Corp., for defendants.

## OPINION

LONGOBARDI, District Judge.

This is an action arising under the patent laws of the United States in which Plaintiff Studiengesellschaft Kohle mbH ("SGK") alleges infringement of three separate patents.[1] SGK alleges that the Defendants USX Corporation ("USX")[2] and Aristech Chemical Corporation ("Aristech") have infringed U.S. Patents 3,257,332 ("the '332 patent"), 3,826,792 ("the '792 patent") and 4,125,698 ("the '698 patent").[3] The present motion concerns only the '332 patent which is entitled "Polymerization of Ethylene." Defendant USX has moved for partial summary judgment on the ground that SGK is collaterally estopped from claiming that USX's polymerization of propylene infringes the '332 patent.[4]

In order to resolve the instant motion, it is necessary to explore the factual background against which it was filed. The '332 patent was issued on June 21, 1966 to Karl Ziegler. The patent was subsequently assigned to Defendant SGK. On September 6, 1967, Ziegler filed a complaint against Phillips Petroleum Company ("Phillips") claiming that Phillips' polymerization of butadiene infringed the '332 patent. The District Court for the Northern District of Texas found no infringement. The Court of Appeals for the Fifth Circuit affirmed, reasoning that the '332 patent is limited to the polymerization of ethylene.

---

1. Plaintiff's original complaint alleged infringement of a fourth patent, U.S. Patent 3,113,115. By stipulation dated January 2, 1986, Docket Item ("D.I.") 17, however, the parties amended the pleadings to delete any allegations or defenses regarding that patent.

2. At the time this action was commenced, Defendant USX was known as United States Steel Corporation. *See* D.I. 24.

3. Aristech was named as a Defendant in a supplemental complaint filed on February 27, 1987. The supplemental complaint appears to claim infringement by Aristech only of the '698 patent.

4. For the first time at oral argument, SGK raised the contention that USX has polymerized

not only propylene but ethylene as well. (Hearing Transcript, D.I. 39 at 28.) Counsel for USX responded that any such production had occurred after the expiration of the patent. *Id.* at 37. Following the hearing, however, counsel for USX advised the Court that it had, in fact, polymerized small amounts of ethylene prior to the expiration of the patent. (Letter to the Honorable Joseph J. Longobardi dated March 20, 1987.) The date and nature of USX's ethylene polymerization, however, are immaterial to the Court's resolution of the instant summary judgment motion which is directed solely to USX's polymerization of *propylene.*

*Ziegler v. Phillips Petroleum Company,* 483 F.2d 858, 872–75 (5th Cir.1973).

Following the assignment of the '332 patent to it, SGK brought suit against Eastman Kodak Company ("Kodak") alleging that Kodak's polymerization of propylene infringed the '332 patent. The District Court for the Eastern District of Texas held that the prior ruling in *Ziegler* collaterally estopped SGK from claiming infringement by the polymerization of propylene. Alternatively, the Court turned to the merits of SGK's infringement claim and found Kodak's polymerization of propylene noninfringing. On appeal, the Fifth Circuit rejected the District Court's conclusion that the ruling in *Ziegler* collaterally estopped SGK from asserting infringement against Kodak. *Studiengesellschaft Kohle v. Eastman Kodak,* 616 F.2d 1315 (5th Cir. 1980). The court reasoned that its broad statement in *Ziegler* regarding the scope of the '332 patent was not essential to its finding of noninfringement in that case. *Id.* at 1332–33.[5] Addressing the merits, the court went on to hold that the '332 patent does not encompass the polymerization of propylene and thus was not infringed by Kodak's production of polypropylene.

It is against this background that USX has moved for partial summary judgment in the instant case. USX asserts that the prior decisions in both *Ziegler* and *Kodak* preclude SGK from claiming infringement by USX's polymerization of propylene. While USX argues that both of the prior decisions bar SGK's claim of infringement here, the Fifth Circuit's reasoning in *Kodak,* 616 F.2d at 1331–33, expressly approved by the Federal Circuit in *A.B. Dick Co. v. Burroughs Corp.,* 713 F.2d 700, 703–04 (Fed.Cir.1983), makes clear that the earlier decision in *Ziegler* does not foreclose SGK from asserting that polymerization of propylene infringes its '332 patent. The Court's resolution of USX's summary judgment motion thus rests solely on the Fifth Circuit's later decision in *Kodak.*

■ The requirements for the application of collateral estoppel are well settled.[6] Collateral estoppel is appropriate if: (1) the issue sought to be litigated is identical to one decided in a prior action; (2) the issue was actually litigated in the prior action; (3) resolution of the issue was essential to a final judgment in the prior action; and (4) the party against whom collateral estoppel is sought had a full and fair opportunity to litigate the issue in the prior action. *A.B. Dick,* 713 F.2d at 702 (citing *Blonder–Tongue v. University Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971)). The Court will address each of these factors in turn.

### 1. IDENTITY OF ISSUES

It is readily apparent that the issues resolved in *Kodak* and presented by this case are identical. In *Kodak,* SGK asserted that Kodak's polymerization of propylene infringed the '332 patent. In the instant case, SGK makes the identical claim but simply names a different party, USX. The issues in both cases are thus identical: whether the '332 patent extends to the polymerization of propylene. *See Kodak,* 616 F.2d at 1332.

SGK argues, however, that the issues are not necessarily identical. SGK contends that the Fifth Circuit's conclusion that the polymerization of propylene does not infringe the '332 patent *may* have been based at least in part on an analysis of the chemical composition of the accused catalyst in *Kodak.* If so, SGK argues, the issues are not identical since any analysis of Kodak's catalyst would involve considerations different from those presented by USX's catalyst.

The Court finds SGK's argument wholly unpersuasive. First, SGK makes its argument despite the fact that nowhere in its opinion does the Fifth Circuit refer to such an analysis as the basis for its ruling. Moreover, the opinion on its face indicates that no such analysis was relied upon by

---

5. As discussed *infra,* a finding that resolution of the issue in question was essential to the prior judgment is a predicate to the application of collateral estoppel.

6. "Collateral estoppel" has also more recently been termed "issue preclusion." *See, e.g., Neoplan U.S.A. Corp. v. Taylor,* 604 F.Supp. 1540, 1543 (D.Del.1985).

the court. The court expressly stated that because it found the production of polypropylene to be beyond the scope of the patent, it was unnecessary to address whether Kodak's catalyst infringed the patented catalyst under the doctrine of equivalents, an inquiry which would have involved a comparison of the two catalysts. *Kodak*, 616 F.2d at 1335. It is thus clear that the Fifth Circuit's finding of noninfringement was based solely on its determination that the '332 patent does not encompass the polymerization of propylene. This is precisely the issue which SGK seeks to have the Court reexamine here.

## 2. ISSUE ACTUALLY LITIGATED

The requirement that an issue must have been "actually litigated" is "generally satisfied if the parties to the original action disputed the issue and the trier of fact resolved it." *Mothers Restaurant, Inc. v. Mamma's Pizza, Inc.*, 723 F.2d 1566, 1570 (Fed.Cir.1983) (quoting *Continental Can Co., U.S.A. v. Marshall*, 603 F.2d 590, 596 (7th Cir.1979)). Whether the polymerization of propylene infringes the '332 patent was one of the central issues of the *Kodak* lawsuit and was squarely addressed by both the trial court, 450 F.Supp. 1211 at 1217–18, 1224 (D.C.Tex.1977) and the Fifth Circuit, 616 F.2d at 1333–35. The Court thus has little difficulty in concluding that the issue sought to be litigated here was "actually litigated" in *Kodak*.

## 3. DETERMINATION ESSENTIAL TO FINAL JUDGMENT

█ The Court must next determine whether the Fifth Circuit's conclusion that the '332 patent does not encompass the polymerization of propylene was essential to its infringement decision. It is elementary that in resolving an infringement claim, a court must first define the scope of the patent. *See, e.g., Fromson v. Advance Offset Plate, Inc.*, 720 F.2d 1565, 1569 (Fed.Cir.1983). Only then can the court determine whether the patent encompasses the accused product or process. *Id.* Judicial statements regarding the scope of a patent must, however, be narrowly construed. *A.B. Dick*, 713 F.2d at 704. For "[e]xcept in the context of validity or in-

fringement, judicial statements regarding the scope of patent claims are hypothetical insofar as they purport to resolve the question of whether prior art or products not before the Court would, respectively, anticipate or infringe the patent claims." *Id.* Thus, a judicial statement regarding the scope of patent is entitled to collateral estoppel effect only insofar as it was essential to a final judgment on the question of validity or infringement. *Id.*

It was for this very reason that the Fifth Circuit's determination in *Ziegler* that the '332 patent is limited to the polymerization of ethylene did not preclude SGK from asserting in *Kodak* that the polymerization of propylene infringed the patent. The only issue before the court in *Ziegler* was whether the defendant's polymerization of butadiene infringed the '332 patent. All that was essential to the court's finding of noninfringement was its conclusion that the '332 patent does not encompass the polymerization of butadiene. The Fifth Circuit, however, went beyond that issue and concluded that "the '332 patent is limited to the polymerization of ethylene." *Ziegler*, 483 F.2d at 875. As the Fifth Circuit later recognized in *Kodak*, that broad finding was not essential to its decision and thus could not serve as a basis for collateral estoppel. 616 F.2d at 1332–33.

In contrast to its broad, sweeping statement in *Ziegler* that the '332 patent is limited to the polymerization of ethylene, however, the court in *Kodak* was careful to confine its decision to all that was necessary for a finding of noninfringement. SGK asserted that Kodak's polymerization of propylene infringed the '332 patent. The Fifth Circuit examined the claims of the patent, the intent and understanding of the patentees regarding the scope of the patent and the underlying chemistry involved, and arrived at the conclusion that the '332 patent does not encompass the production of polypropylene. That determination was essential to the court's resolution of the infringement issue.

## 4. FULL AND FAIR OPPORTUNITY TO LITIGATE

The final requirement for the application of collateral estoppel is that the party

against whom collateral estoppel is sought must have had a "full and fair opportunity" to litigate the issue in the prior action. The scope of the "full and fair opportunity" requirement is less than clear. Indeed, the Supreme Court has itself remarked that its decisions "have not specified the source or defined the content of the requirement." *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481, 102 S.Ct. 1883, 1897, 72 L.Ed.2d 262 (1982). In *Blonder–Tongue*, however, the Supreme Court did set forth a number of factors to which a court might look to determine whether a party had been afforded a "full and fair opportunity" to litigate a particular issue: (1) whether the party was the plaintiff in the prior action and chose to litigate at that time and place; (2) whether the party was prepared to litigate against the defendant there involved; (3) whether the court purported to apply the applicable legal standards; (4) whether the prior case was one of those "relatively rare instances where the courts wholly failed to grasp the technical subject matter and the issues in suit"; and (5) whether without fault of his own the party was deprived of crucial evidence or witnesses in the prior litigation. 402 U.S. at 332–33, 91 S.Ct. at 1444–45. *See also Stevenson v. Sears, Roebuck & Co.*, 713 F.2d 705 (Fed.Cir.1983).

The Federal Circuit has recently explained that the "full and fair opportunity" requirement established in *Blonder-Tongue* is subsumed within a more general requirement that the party sought to be precluded must have been "fully represented" in the prior action. *Mamma's Pizza*, 723 F.2d at 1569–70 n. 4. *See also, Thomas v. General Services Admin.*, 794 F.2d 661, 664 (Fed.Cir.1986). Under this more general requirement, it is clear that collateral estoppel is appropriate in the instant case. There can be little dispute that SGK was "fully represented" in *Kodak*, for SGK was a party to that action and was represented by counsel.

Even under the more exhaustive analysis of the factors set forth in *Blonder-Tongue*, the *Kodak* decision is entitled to collateral estoppel effect. The only factor seriously contested by SGK is whether the *Kodak* court "purported to employ the [applicable legal] standards...." [7] SGK asserts that the Fifth Circuit failed to do so in not comparing the components of the '332 catalyst with those of the accused catalyst and in declining to inquire whether Kodak's polymerization of propylene infringed the '332 patent by the doctrine of equivalents. The Court disagrees.

As discussed *supra*, it is axiomatic that a determination of infringement involves two distinct inquiries: (1) the scope of the patent in suit; and (2) whether the claims of the patent, properly construed, encompass the accused product or process. The Fifth Circuit clearly understood these basic principles, *Kodak*, 616 F.2d at 1323–24, and applied them to the case at bar. *Id.* at 1333–35. The court examined not only the words of the patent claims but also the intent of the patentees and the underlying chemistry involved in order to arrive at the conclusion that the '332 patent does not encompass the polymerization of propylene. Having done so, there was simply no need for the court to proceed further, for any additional inquiry would have been fruitless.

It is thus clear that the Fifth Circuit did indeed apply the applicable legal standards. That it did so in a manner adverse to the claims of SGK is not a basis for denying its decision collateral estoppel effect. In point of fact, SGK's argument amounts to nothing more than a collateral attack on the correctness of the Fifth Circuit's decision. It has long been clear, however, that in deciding whether collateral estoppel is appropriate in a particular case, it is improper to inquire whether the prior judgment is correct. *See Stevenson*, 713 F.2d at 709. Premised upon an underlying confidence that the prior adjudication was indeed correct, *Standefer v. United States*, 447 U.S. 10, 23 n. 18, 100 S.Ct. 1999, 2007 n. 18, 64 L.Ed.2d 689 (1980), the doctrine of collateral estoppel is designed to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and ...

7. Plaintiff's Brief in Opposition to Partial Summary Judgment Motion, D.I. 16 at 21.

encourage reliance on adjudication." *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). To deny collateral estoppel effect to a judicial determination simply because it may have been wrong would wholly frustrate these important benefits.[8] For this very reason, the Supreme Court has declared that "[a] judgment merely voidable because based on an erroneous view of the law is not open to collateral attack." *Moitie,* 452 U.S. at 398, 101 S.Ct. at 2428 (quoting *Baltimore S.S. Co. v. Phillips,* 274 U.S. 316, 325, 47 S.Ct. 600, 604, 71 L.Ed. 1069 (1927)).[9] The proper means to attack an erroneous decision is not to commence a second lawsuit against another party but to challenge the decision on direct review.[10]

The Court does not mean to intimate by the above discussion that it views the Fifth Circuit's decision in *Kodak* as erroneous. Indeed, the doctrine of collateral estoppel is designed to prevent just an inquiry. The Court simply concludes that even assuming *arguendo* that the Fifth Circuit's determination was in error, collateral estoppel is no less appropriate.

Each of the four requirements for the application of collateral estoppel has thus been satisfied. It is important to recognize, however, that this does not end the inquiry. For as the Supreme Court explained in *Blonder-Tongue,* "no one set of facts, no one collection of words and phrases, will provide an automatic formula for

proper rulings on estoppel pleas." 402 U.S. at 333–34, 91 S.Ct. at 1445. Instead, the resolution of whether collateral estoppel is appropriate "will rest on the trial court's sense of justice and equity." *Id.* at 334, 91 S.Ct. at 1445. Thus, there may exist in a particular case certain circumstances which render the application of collateral estoppel inappropriate. *Allen v. McCurry,* 449 U.S. 90, 95 n. 7, 101 S.Ct. 411, 415 n. 7, 66 L.Ed.2d 308 (1980); *Montana v. United States,* 440 U.S. 147, 155, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979).

■ In the instant case, SGK asserts that two such special circumstances make this case an inappropriate one for the application of collateral estoppel. SGK first argues that there has been a change in the controlling law since the Fifth Circuit decided *Kodak.* SGK points to the fact that in 1982, legislation was enacted which required all appeals in patent infringement cases to be taken to the newly created Court of Appeals for the Federal Circuit. Upon its creation, the Federal Circuit announced that it would adopt as precedent the decisions of its predecessor courts, the Court of Custom and Patent Appeals and the Court of Claims. *South Corp. v. United States,* 690 F.2d 1368 (Fed.Cir.1982). From this, SGK apparently derives the argument that because the Fifth Circuit's decisions are not binding precedent in the Federal Circuit, there has been a change in the applicable law.

---

**8.** *See Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 398–99, 101 S.Ct. 2424, 2427–28, 69 L.Ed.2d 103 (1981) (To allow collateral attack on a judgment merely because it is based on an erroneous view of the law would create uncertainty and confusion and would undermine the conclusive nature of judgments, "consequences which it was the very purpose of *res judicata* to avert." (quoting *Reed v. Allen,* 286 U.S. 191, 201, 52 S.Ct. 532, 534, 76 L.Ed. 1054 (1932)).

The Court recognizes that *Moitie,* as well as some of the other decisions relied upon by the Court, is a decision based on *res judicata,* not collateral estoppel. While the two doctrines are by no means interchangeable, they both serve the same fundamental purposes. *McCurry,* 449 U.S. at 94, 101 S.Ct. at 414. The concerns voiced by the Supreme Court in *Moitie* regarding *res judicata* are thus equally applicable in the context of collateral estoppel.

**9.** *See also Medina v. Chase Manhattan Bank, N.A.,* 737 F.2d 140, 143 (1st Cir.1984) ("A final judgment does not lose its *res judicata* effect simply because another court might consider the decision erroneous."); *Friarton Estates Corp. v. City of New York,* 681 F.2d 150, 158 (2d Cir.1982) ("*Res judicata* protects wrong decisions as fully as right ones.")

**10.** *See Harrington v. Vandalia–Butler Bd. of Ed.,* 649 F.2d 434, 438 (6th Cir.1981) ("[A] judgment on the merits—even if erroneous—will be deprived of its conclusive effect only if it is vacated, reversed or set aside on direct appeal."); *Walsh v. Intern. Longshoremen's Assn. AFL–CIO,* 630 F.2d 864, 869 (1st Cir.1980) ("The possibility of a wrong decision does not undermine the rule of *res judicata;* the remedy for a wrong decision is the right of appeal, not an unlimited opportunity to bring repetitious [lawsuits].")

SGK's argument can be quickly dismissed. Even assuming that a change in the controlling legal principles makes collateral estoppel inappropriate, there has been no such a change. Indeed, SGK's citation of such authorities as *In re Thuau*, 135 F.2d 344, 30 C.C.P.A. 979 (1943), for the proposition that the Court of Custom and Patent Appeals "has always appreciated that a patentee is protected against all uses of his claimed invention",[11] belies its own contention that there has been a change in the applicable law. The mere creation of the Federal Circuit, together with that court's decision to adopt as precedent the decisions of the Court of Custom and Patent Appeals and the Court of Claims, did not effect a change in the controlling legal principles.

■ SGK next argues that because infringement claims necessarily involve consideration of a specific accused product or process, collateral estoppel can never be based on a prior judicial finding that another defendant's product or process does not infringe a patent. Under SGK's analysis, no prior infringement decision could ever serve as the basis for collateral estoppel unless it involved the same defendant and the same product as are involved in the second action.

Federal Circuit precedent is plainly to the contrary. In *Molinaro v. Fannon/Courier Corp.*, 745 F.2d 651 (Fed.Cir.1984), a patentee and his assignee brought an infringement action against a marketer of scanning monitor radio receivers. The Federal Circuit held that a prior judgment that similar receivers did not infringe the patent was entitled to collateral estoppel effect. In so holding, the Court explained that "[a] second defendant is entitled to the benefit of a judgment issued against the plaintiff in favor of a first defendant in prior litigation on the same issues." *Id.* at 655. The Court pointed to its decision in *A.B. Dick*, in which it had noted that collateral estoppel precludes a plaintiff from relitigating issues already litigated and lost against one defendant by merely switching adversaries. 713 F.2d at 702 (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329, 99 S.Ct. 645, 650, 58 L.Ed.2d 552 (1979)).

This is precisely what SGK seeks to do here. SGK has already had a full and fair opportunity to litigate its claim that the polymerization of propylene infringes the '332 patent, and it lost. SGK, simply by making the identical claim against a different defendant, seeks to have this Court relitigate the issue. This the Court cannot do. The exigencies of litigation demand that at some point there be an end to litigation of a particular issue. This is particularly so in the context of patent litigation. Relitigation of infringement issues already decided not only forces producers and sellers of products to divert their resources away from productive uses in favor of repetitious litigation but also hampers their ability to effectively and efficiently produce and market their products. In deciding whether to produce or sell a particular product, a producer or seller must be free to rely on a prior judicial finding that an identical product is noninfringing. He must not be continuously faced with the threat that at some point, perhaps long after the wheels of production have started in motion, he too will be dragged into the courtroom to defend an infringement claim decided long ago.

SGK has had its day in court with respect to its claim that the polymerization of propylene infringes the '332 patent. It must now move on to other matters and must allow other parties and the Court to do so as well.

■

---

11. Plaintiff's Brief in Opposition to Partial Summary Judgment Motion, D.I. 16 at 15.